[No. 32471.   Department One.   August 13, 1953.]

ALICE M. ARNOLD, *Appellant*, v. HARRY N. SANSTOL *et al.,* *Respondents and Cross-appellants,* LOUIS P. SWARS *et al., Defendants.*[1]

[1] Reported in 260 P. (2d) 327.

*Wright & Wright,* for appellant.

*Kahin, Carmody & Horswill,* for respondents and cross-appellants.

OLSON, J.—Plaintiff was injured in a collision between a taxicab, in which she was a paying passenger, and a car driven by defendant Swars. The jury returned a verdict in her favor against both defendants, but defendants Sanstol, to whom we will refer as the cab company, were granted a new trial. Plaintiff has appealed from this ruling. The cab company has cross-appealed, and assigned error upon the denial of its motions for dismissal at the close of the case and for judgment notwithstanding the verdict. Defendant Swars has not appealed.

This collision occurred on Westlake avenue north in the city of Seattle. This is a four-lane arterial street running generally north and south. It is practically straight for more than five hundred feet south of the point of collision, and to the north from about this point, it curves slightly to the west. It is approximately level in this vicinity, and is surfaced with blacktop forty-six feet wide. Its center was marked by a double line. Two traffic lanes on each side of the double line were marked by broken lines ten feet from the center lines.

The collision occurred about two o'clock in the morning. Rain was falling at the time. The car being driven by defendant Swars came from the north and collided with the cab, which came from the south. The vehicles met "head on" or nearly so. The entire front end of both cars was damaged badly, the most severe damage being on the left side of the front of each car.

The driver of the cab was killed in the collision. Plaintiff testified that, as the cab came into Westlake, she noticed nothing abnormal in the manner in which it was being driven. She testified that, as she was looking through a window on the right side of the cab for the address to which she was going (apparently they had driven beyond it), the driver remarked: " 'The vision is awfully poor tonight. I can't hardly see.' " Her testimony continued:

"Q. What happened then? A. Well, I noticed how far over to the center of the highway he was and that he was going awfully fast, and I said, 'You're going awfully fast. You better pull over in your own lane.' And the cab swerved then, and that is all I ever knew. . . . [On cross-examination, she said it swerved to the right.] Q. You say when he made that remark you observed he was going fast? A. Yes. Q. How fast do you think he was going? A. I don't know the exact speed. I didn't look at the speedometer, but it must have been up over fifty miles an hour, I'm sure."

She placed the cab near, but not over, the center line of the street. She did not see the approaching car. She could not tell how much time elapsed or the distance the cab traveled after the quoted observations and before the impact.

Swars testified that his last recollection of the events was when he was thirty to forty feet, or possibly one hundred feet, from the cab. At that time, he was on his right side of the center line, and the cab was on its own side of the street. He placed both cars near the center line. His speed was about thirty-two miles an hour, and he noticed nothing unusual in the speed of the cab. He could not explain how the collision occurred.

The only witness who testified that he observed the accident, was following the cab and was three hundred feet or more behind it when the collision occurred. He testified that he was going about thirty-two miles an hour and was overtaking the cab. He placed the cab at a point to the right of the center line of the street, straddling the broken line marking the traffic lane. He observed the approaching car (driven by Swars) turn to its left and collide with the cab on the cab's side of the center line. He observed no change in the direction of the cab before the collision.

The law of this case is stated in the unchallenged instructions given to the jury, of which the following are material to our inquiry. They state that it was the duty of Swars to exercise reasonable and ordinary care, and of the cab company to use the highest degree of care consistent with the practical operation of the cab under the circumstances.

After defining the lawful speed of vehicles at the point of collision, they state that, if the jury should find that the Swars automobile turned suddenly from its side of the street and collided with the cab on the east side of the street, and that such turning was so sudden and when the vehicles were so close to each other that it would have been impossible for the cab driver to have avoided the collision, then the excessive speed, if any, of the cab would be immaterial on the question of liability.

They further state that it is unlawful to drive a vehicle across any street at any place other than at a street intersection, and that, if the jury found that Swars violated this rule, such violation would constitute negligence, and that,

if they further found this to be the sole proximate cause of the accident, their verdict should be in favor of plaintiff and against Swars, and in favor of the cab company.

A further instruction states that it is the duty of the operator of a vehicle to drive to the right of the center of the highway at all times, and that the driver of a vehicle meeting one approaching from the opposite direction, has a right to assume that the approaching driver will keep on his side of the street, until he sees or, in the exercise of reasonable care on his part, should see that the approaching driver is not obeying this rule of the road.

A further instruction is:

"Your problem is to determine where this accident occurred. If it occurred on the east side of the center of the highway, then you are instructed that the defendant Swars was guilty of negligence, and if such negligence was a proximate cause of the accident, then your verdict should be against the defendants Swars. Likewise, if you find the collision occurred to the east of the center line of the street, then your verdict should deny liability against the defendants Sanstol [cab company], unless you further find that, despite the point of accident, the driver of the taxicab was guilty of negligence which proximately contributed to cause the accident."

Our disposition of this case is determined by our conclusion upon the issue raised by the cross-appeal. No element of discretion is involved in ruling upon this issue.

■■■■ A verdict will not be set aside unless the court can say, as a matter of law, that there is neither evidence nor reasonable inference from the evidence to support the verdict. The evidence must be viewed in the light most favorable to the party against whom the motion is made. All competent evidence favorable to the party who obtained the verdict must be taken as true, and that party must be given the benefit of every favorable inference which reasonably may be drawn from the evidence. If there is substantial evidence to support the verdict, it must stand. Substantial evidence is that character of evidence which would convince an unprejudiced, thinking mind of the truth of the fact to which the evidence is directed.

*Rettinger v. Bresnahan,* 42 Wn. (2d) 631, 633, 257 P. (2d) 633 (1953), and case cited.

■ Such evidence may be direct or circumstantial. When reliance is placed upon the latter type, of evidence, there must be reasonable inferences to establish the fact to be proved. No legitimate inference can be drawn that an accident happened in a certain way by simply showing that it might have happened in that way, without further showing that reasonably it could not have happened in any other way. The facts relied upon to establish a theory by circumstantial evidence must be of such a nature and so related to each other that it is the only conclusion that fairly or reasonably can be drawn from them. A verdict cannot be founded on mere theory or speculation. If there is nothing more tangible to proceed upon than two or more conjectural theories, under one or more of which a defendant would be liable, and under one or more of which there would be no liability upon him, a jury will not be permitted to conjecture how the accident occurred. *Gardner v. Seymour,* 27 Wn. (2d) 802, 808, 180 P. (2d) 564 (1947), and cases cited; *Carley v. Allen,* 31 Wn. (2d) 730, 737, 198 P. (2d) 827 (1948); *Stevens v. King County,* 36 Wn. (2d) 738, 747, 220 P. (2d) 318 (1950), and cases cited.

■ In this case, the burden of proof is upon plaintiff to establish not only the negligence of defendant cab company, but that such negligence was a proximate cause of her injuries. We must determine whether she has met this burden, so that it can be said that her verdict rests upon evidence, or legitimate reasonable inferences from the evidence, and not upon conjecture.

■ There is no evidence that the point of this collision was west of the center line of the street, and, from all the evidence, including the photographs of the cars taken after they collided and before they were moved, the jury could not have found other than that it occurred about five or six feet east of the center line, that is, on the cab's proper side. Consequently, if their verdict against the cab company is sound, it must be supported by substantial evidence of negligence of the driver which proximately contributed to

cause the collision, "despite the point of accident," as they were directed by the quoted instruction.

The instructions submitted but two possible theories of negligence of the cab driver, one his speed, and the other his duty to avoid the collision after he knew or should have known that Swars would not remain on his own side of the street.

Assuming that the rate of speed at which the cab driver was driving was negligent, in that event, if it could be said that the Swars car turned suddenly across the center line, that negligence was immaterial on the question of liability, under the instructions. Further, in the event of such a sudden turn in front of him, the cab driver could not have been negligent in failing to avoid the Swars car. Plaintiff cannot recover from the cab company on the theory of a sudden turn by Swars.

Assuming that this theory of a sudden turn is rejected, the question is whether or not there is substantial evidence that, in plaintiff's words, "the Swars car came over the [center] line sufficiently far ahead of the taxi to impose upon the driver of the taxi the duty to see and avoid" the Swars car.

None of the parties involved in the collision could testify in this regard. The only person who testified that he observed the collision was the witness who was following the cab. If we disregard his testimony which is unfavorable to plaintiff, as we must do on this motion, she is dependent upon circumstantial evidence to establish some essential elements of her case.

The trial judge stated that there was no evidence that the cab driver saw the other car coming and realized the problem. He found no basis for an instruction on the theory that the cab driver was or was not confronted with an emergency, so that he either had time to choose a course of conduct or that he did make a choice. This failure to instruct is not before us for review, but the trial court's expressed opinion of the evidence is of importance.

We cannot find any substantial evidence, or any legitimate inference from evidence, from which it can be said that the

only conclusion that fairly and reasonably can be drawn is that the Swars car was driven over the center line gradually. It is impossible to determine when or in what manner Swars crossed the center line of the street. The evidence, measured by the rules we have stated, does not support a conclusion that the cab driver, even in the exercise of the highest degree of care, reasonably should have foreseen the conduct of Swars and recognized the risk, or taken precautions against it. It is necessary to conjecture in order to conclude that he was negligent, in that he failed to see and avoid Swars.

Assuming that the speed of the cab was negligent, this same evidence, measured by the same standards, likewise cannot be said to have established that such speed was a proximate cause of the collision. Conjecture and speculation also must be relied upon to support this conclusion, which is essential to plaintiff's recovery even though this negligence of the cab driver is assumed. *Woodward v. Simmons*, 7 Wn. (2d) 10, 19, 108 P. (2d) 637 (1941), and cases cited.

Because of the failure of plaintiff's proof, her verdict against the cab company cannot stand. The order of the trial court is reversed, with instructions to enter judgment for the cab company.

GRADY, C. J., MALLERY, HILL, and WEAVER, JJ., concur.