[No. 33427.   Department One.   April 26, 1956.]

ERNEST W. WOOD et al., *Respondents*, v. MARY JO MYERS et al., *Appellants*.

PHILIP L. STRELINGER et al., *Respondents*, v. ERNEST W. WOOD et al., *Defendants*, MARY JO MYERS et al., *Appellants*.[1]

[1]Reported in 296 P. (2d) 525.

*Willard S. Pedersen* and *Robert I. Odom,* for appellants.

*Helsell, Paul, Fetterman, Todd & Hokanson* and *Richard S. White,* for respondents Wood.

SCHWELLENBACH, J.—These actions arose out of a five-car collision which occurred on the East Valley highway between Kent and Auburn.

At about three o'clock in the morning of September 27, 1953, Ernest W. Wood was driving his Dodge automobile in a southerly direction on the East Valley highway. Following him was Mary Jo Myers, driving a Mercury owned by her stepfather and mother, R. E. Kennett and wife. Following her was Norman Kuehne in his Nash. Coming in the opposite direction was Gordon J. Tebb, driving a Pontiac owned by Philip L. Strelinger, his brother-in-law. Following Tebb was Mildred Nussbaumer, driving a Chevrolet. The Dodge and the Pontiac crashed practically head-on, on the Tebb side of the road. The other cars crashed before they could be stopped. Both Wood and Tebb were injured—Wood quite seriously.

Wood and wife sued Miss Myers and the Kennetts, as owners of the car, and Kuehne and wife. (The Kuehnes were dismissed out of these cases.) Plaintiffs Wood alleged that Miss Myers collided with the rear of the Wood car, causing him to collide with the Pontiac driven by Tebb; and that Miss Myers failed to keep a proper lookout for traffic; failed to keep a safe distance from the car ahead; and drove at an excessive speed under the conditions then and there prevailing. Defendants Kennett cross-complained, alleging that Wood negligently, while under the influence of, or affected by, intoxicating liquor, drove over into the opposite lane and into the car driven by Tebb. In the other case, the Strelingers and Tebb alleged negligence on the part of both Wood and Miss Myers. The Woods pleaded affirmatively that the damages to Strelinger and Tebb were due to the negligence of Miss Myers. Miss Myers and the Kennetts pleaded affirmatively that Tebb was guilty of contributory negligence.

The trial court submitted the following interrogatories to the jury:

"INTERROGATORY No. 1:

"Did the Myers-Wood collision occur first?

ANSWER: ........................................

"If your answer to Interrogatory No. 1 is 'yes', no further answers need be given. If your answer to Interrogatory No. 1 is 'no', then you will answer the following:

"INTERROGATORY No. 2:

"Did the Wood-Tebb collision occur first?

ANSWER: ........................................

"If your answer to Interrogatory No. 2 is 'yes', then Ernest W. Wood was guilty of negligence. In that event,

(a) Was defendant Mary Jo Myers guilty of contributory negligence?

"ANSWER: ........................................"

The jury answered "Yes" to Interrogatory No. 1.

In the *Wood* case, the jury found for the plaintiffs and against Miss Myers and the Kennetts.

In the *Strelinger* case, the jury found for the plaintiffs and against Miss Myers and the Kennetts.

Appellants assign error to the court's action in denying

motion for nonsuit; in denying motion for judgment n.o.v.; in giving certain instructions; in refusing to give certain instructions; in withdrawing the question of intoxication from the jury; and in submitting the interrogatories to the jury.

Neither Wood nor Tebb was able to testify to just how, or in what sequence, the various collisions occurred. Wood testified:

"A. The first realization that I had that there was anything impending at all, all of a sudden I noticed approaching car lights. They seemed to be coming just flashing diagonally right across in front of me and also at the same time I noticed a vicious shuddering, grating vibrating effect in my car, but those lights, they seemed to be just — I don't know how to describe — they just come right across in front of me. They didn't try to veer to the right. It seemed like they were just, came like a — magnetized. That was the first impression of anything impending, and just a fleeting second before that accident."

Tebb testified that he noticed the headlights of a car coming in the opposite direction; that as it got closer it started to move onto the center line; that he thought it was just coming over and would go back; that it kept moving over and all of a sudden it was right in front of him.

Miss Myers testified that, at the time in question, she was employed in the cannery in Kent; that she drove there in her parents' Mercury; that she worked from four p. m. to one a. m.; that she had a date with Kuehne; that they were to drive their own cars to her home in Auburn, and then go in his car to have something to eat; that he worked until three and she waited for him; that, when they started out, she was in the lead because she knew the road; that she was traveling around forty or fifty, or fifty-five miles an hour; that, as she approached the place of the accident, she looked into the rear view mirror for a few seconds to see if Kuehne was following; that when she dropped her gaze back to the road there was a car (Wood's) directly in front of her one or two car lengths ahead; that she attempted to avoid an accident by swerving to the right, but that the left front of her car hit the right rear of the Wood car; that she heard no crashes before she looked down from the rear view mir-

ror; and that she heard two crashes other than her own after she had crashed.

■ Appellants contend that Wood collided with Tebb on the Tebb side of the road; that the force of the collision bounced Wood back into his right lane, after which he was struck by Miss Myers. It would require pure speculation to arrive at such a conclusion. There is no evidence which would justify it unless we consider Wood's testimony as to the oncoming car heading across the road toward him. The doctor who examined Wood at the hospital stated that he was in a moderate shock, due to cerebral concussion.

The jury found that the Myers-Wood collision occurred first. From the testimony, together with the positions of all of the cars after the accident, and the specific damages to the right rear of the Dodge and the left front of the Mercury, we do not see how the jury could have found otherwise.

The trial court gave instruction No. 8:

"There has been some evidence that Ernest W. Wood consumed some beer prior to the accident. Such evidence was admitted on the theory that the opposing parties were entitled to prove, if they could, (a) that Mr. Wood was sufficiently under the influence of intoxicating liquor that his driving would be affected, and (b) that his driving while under the influence (if he did) was a proximate cause of the accident. You are instructed that the direct evidence is insufficient as a matter of law to support a finding that he was under the influence of liquor to such an extent that his driving would be affected by it.

"You are further instructed that there is no circumstantial evidence sufficient to support an inference that he was driving under the influence of liquor except the evidence (which is disputed) that the Wood-Tebb collision occurred before the Myers-Wood collision. If it were established by other evidence (i.e., without reference to the beer) that Wood drove into the northbound lane and collided with Tebb before Miss Myers collided with him, then such fact, if true, would be a circumstance tending to support the claim of driving while under the influence. However, if such were the fact, Mr. Wood would be negligent whether he had been drinking or not, and such negligence would be a proximate cause of the damage. On the other hand, if

the Myers-Wood collision occurred first, then there is no evidence sufficient to support an inference that his consumption of beer could possibly have contributed as a proximate cause of either that collision or those that followed.

"For these reasons, the evidence concerning Mr. Wood's consumption of beer can serve no useful purpose, and you will disregard it in reaching your decision on the facts of this case."

Saturday, December 26, 1953, the day before the accident, was the wedding day of the Woods' son. Mr. Wood did not work that day. He had breakfast around seven o'clock. He drove his wife to the hospital where she worked. After lunch, he had two beers at a tavern in Renton. The wedding was at six o'clock, after which there was a reception, and a complete wedding supper was served. He and his wife drove home to Auburn around 10:30. About an hour later he went uptown and had a beer. He then watched a pinochle game until closing time, after which he went home and made a sandwich and read for a while. About 12:30, he got into the car and drove to Renton to visit a friend. Later, he went to Kent and visited another friend. The two split a jumbo of beer. He left there about fifteen minutes before the accident. The investigating officer and the ambulance driver both testified that they smelled liquor on his breath. E. T. Corning, of the Seattle police department, testified that under the above facts Wood would not have been under the influence of or affected by intoxicating liquor at the time of the accident.

■ Although this is ordinarily a question of fact to be determined by the jury, we are of the opinion that, under the facts of this case, the trial court was correct in refusing to submit this issue. Under the evidence produced, the jury would not have been justified in concluding that, at the time of the accident, Wood was under the influence of or affected by intoxicating liquor.

■ Substantial evidence is that which would convince an unprejudiced, thinking mind of the truth of the fact to which the evidence is directed. *Arnold v. Sanstol*, 43 Wn. (2d) 94, 260 P. (2d) 327. See, also, *Schalow v. Oakley*, 18

Wn. (2d) 347, 139 P. (2d) 296, where we held, under evidence quite similar to that in the instant case, that the plaintiffs did not produce substantial evidence that the driver of an automobile was under the influence of intoxicating liquor at the time of the collision, and that the court properly withdrew that issue from the jury.

■ Appellants contend, however, that such evidence should have been considered in connection with the issue of whether or not Wood negligently drove over into the opposite lane. Their argument seems to be this. There is the physical fact that Wood went over into the opposite lane. In determining whether or not he was negligent in so doing, the jury should have considered the evidence of his drinking beer and of the odor of liquor on his breath. It seems to us that that would be putting the cart before the horse. The trial court stated, in commenting on the exception to the instruction:

". . . and I feared that unless I gave this instruction we would have the jury going around in a vicious circle saying that he must have — 'Well, he wouldn't have gone across the center unless he were intoxicated,' and 'If he went across the center, he was intoxicated.' 'Therefore, he went across the center line. Therefore, he was intoxicated.' And I felt that before either of those propositions could be used as a circumstance to bolster an inference that the other was true, they had to be sufficient to stand on their grounds."

Under the facts, the submission of the issue of Wood's drinking would have tended to confuse, rather than assist, the jury. This case is distinguishable on its facts from *Paddock v. Tone*, 25 Wn. (2d) 940, 172 P. (2d) 481, relied upon by appellants.

Error is assigned to the last sentence of instruction No. 12, which directed the jury to find for Strelinger and Tebb for the damage sustained by each. It is contended that the conclusion is obvious that the trial court thought that one or more of the defendants was responsible and that this was a conclusion for the jury to make, rather than one upon which the court should express an opinion.

■ As has already been seen, the case hinged upon a

determination of which collision took place first. Instruction No. 15, to which no exception was taken, told the jury that, if it found that the Myers-Wood collision occurred first, it should return verdicts against Myers and Kennett and in favor of the plaintiffs; and that, if it found that the Wood-Tebb collision occurred first, it should return verdicts against Wood and in favor of Strelinger and Tebb and also in favor of cross-complainants Kennett unless Miss Myers was guilty of contributory negligence. Thus the determination of responsibility was left to the jury.

■ Error is assigned to the refusal to give proposed instructions involving the issue of conjecture and speculation by the jury. There are situations where such instructions would be proper. However, they were not proper here. The jury's verdict was not based upon conjecture or speculation. It was based upon evidence, both oral and circumstantial, which warranted the decision rendered.

The judgments are affirmed.

HAMLEY, C. J., DONWORTH, MALLERY, and OTT, JJ., concur.