THOMAS SULLIVAN ATKINS v. EDDIE LEE MOYE AND BARNEY BURKE
TRANSFER COMPANY, INC., A CORPORATION

No. 7028SC39

(Filed 27 May 1970)

**1. Automobiles § 88—    automobile accident — contributory negligence
— issue of plaintiff's intoxication**

Issue of plaintiff's contributory negligence on the ground that plaintiff
was under the influence of intoxicating liquor at the time of the collision
between plaintiff's automobile and defendant's stopped truck on the high-
way, *held* improperly submitted to the jury, where the only evidence re-
lating to plaintiff's intoxication consisted of (1) defendant's testimony
that plaintiff had the odor of whiskey on his breath immediately after
the collision, (2) a highway patrolman's testimony that there was an
odor of alcohol in plaintiff's car and that he noted on his accident report
that plaintiff had been drinking, and (3) testimony that a partially filled
whiskey bottle was found under the seat of plaintiff's car.

**2. Automobiles § 44—    contributory negligence**

The burden of proof on the issue of plaintiff's contributory negligence
is on the defendant.

MALLARD, C.J., dissenting.

APPEAL by plaintiff from *Snepp, J.,* 16 June 1969 Session BUN-
COMBE Superior Court.

This is a personal injury action arising out of a collision which
occurred immediately east of the intersection of U. S. Highway 19-23
and Interstate Highway 40, at approximately 10 o'clock p.m. on 11
December 1964, between an automobile owned and driven by plain-
tiff and a tractor-trailer unit owned by defendant Barney Burke
Transfer Company, Inc., and driven by defendant Eddie Lee Moye.

Plaintiff's primary allegation of negligence as to defendants was
that defendant Moye parked his tractor-trailer unit upon the main
portion of a main traveled highway at night without displaying the
lights and flares required by law when it was practicable to park his
unit on the shoulder of the highway.

Each defendant answered separately, and each denied negligence
and averred that plaintiff was contributorily negligent. One of the
specific acts of negligence attributed to plaintiff by each defend-
ant's answer was that he was "operating a motor vehicle while he
was drinking intoxicating beverages" and was "operating a motor
vehicle while his faculties were appreciably impaired by the con-
sumption of intoxicating beverages."

Among other questions submitted to the jury on the issue of

plaintiff's contributory negligence, the court submitted the question of plaintiff's operation of a motor vehicle while under the influence of some intoxicating beverage. The jury answered the issue of defendant's negligence and the issue of plaintiff's contributory negligence in the affirmative. Plaintiff appeals.

*Bennett, Kelly & Long, by Robert B. Long, Jr., for plaintiff appellant.*

*Van Winkle, Buck, Wall, Starnes & Hyde by. O. E. Starnes, Jr., for defendant appellees.*

MORRIS, J.

[1]   The first question raised by plaintiff on appeal is whether the court erred in submitting to the jury the question of whether he was driving a motor vehicle while under the influence of some intoxicating beverage on the issue of contributory negligence. He strenuously argues that there was insufficient evidence of intoxication to warrant a finding of intoxication.

The portion of the charge to which the plaintiff excepts and which he assigns as error is:

"Now the defendant also contends that on this occasion the plaintiff was operating a vehicle while under the influence of some intoxicant. Plaintiff contends that he was not operating his vehicle under the influence of any intoxicant.

It is provided by statute in North Carolina that it shall be unlawful for any person who is under the influence of intoxicating liquor to drive any vehicle upon a highway within this State. A violation of this statute is negligence per se, and if you are satisfied by the greater weight of the evidence that there was a violation of the statute and that this contributed to the plaintiff's injuries, then this would be contributory negligence.

Now, a person is under the influence of intoxicating liquor within the meaning and intent of this statute when he has drunk a sufficient quantity of an intoxicating beverage to cause him to lose the normal control of his bodily or mental faculties, or both, to such an extent that there is an appreciable impairment of either or both of these faculties. The word 'appreciable' means: capable of being estimated, weighed, judged of, or recognized by the mind. The test is not the amount of intoxicating liquor a person may have drunk, but whether he was affected thereby to the extent just stated.

The evidence tending to show that the plaintiff was operating his motor vehicle while under the influence of some intoxicant is mainly circumstantial. An essential fact may be proved by circumstantial evidence, but the circumstances must be such as to raise a logical inference of the fact to be proved, and not to raise a mere conjecture or surmise, and they must be such as to satisfy you of the necessary facts by the greater weight of the evidence.

So I instruct you, ladies and gentlemen, that if the defendant has satisfied you by the greater weight of the evidence that on this occasion the plaintiff was operating his motor vehicle on this highway while he was under the influence of some intoxicating liquor, as I have defined that term to you, then that would be negligence on the part of the plaintiff. If you are further so satisfied that this contributed to the plaintiff's own injuries, then this would be contributory negligence upon the part of the plaintiff."

Plaintiff testified that the accident occurred approximately 208 feet east of the intersection . of U.S. Highway 19-23 and Interstate 40 and that his home was situate approximately three or four hundred feet east of the intersection. On the evening in question, he had been to Canton and was returning home when the collision occurred. He left home about 7:30, went to Valley View Shopping Center, about one mile east of his home, where he remained until about 8:30, looking around and making his Christmas list. From there he drove to Canton, found that the stores were about to close, and shortly started back home. The weather was rainy and foggy and very disagreeable. The road was black top, and it was difficult to see with patches of fog. He stopped at the Owl Drive-In to wait for the weather to clear a bit. He remained there approximately 25 or 30 minutes, had a cup of coffee, and talked with the owner. He left there a few minutes before 10:00 — just about three minutes before the accident occurred. As he approached his driveway, he was going approximately 30 miles per hour and had his windshield wipers on, because it was raining. He "picked up" two headlights approaching which were very bright. He could not see beyond that rim of light, so he looked down at the white line. Just about the time he passed the lights, he saw the back end of defendant's truck which looked like a big load of lumber, apparently standing still. He observed that there were no lights, reflectors or flares of any kind on the rear or to the rear of this vehicle. When he first saw the truck, he was approximately 8 or 10 feet from it, had no time to do anything, and collided with the rear of the truck. Although he saw it for

only an instant, it was in the center of the lane in which he was traveling. The lights on plaintiff's car were on dim. The truck looked to him like a load of lumber stacked in the middle of the road. He had "not had anything of an intoxicating nature to drink on this day, beer, wine or anything."

On cross-examination plaintiff testified that there was a small amount of whiskey in the car which had been there about a week or ten days and about which he had forgotten. He did not customarily carry whiskey with him. This very small amount had been given to him and he had put it back under the seat and had forgotten about it. He denied that he was drinking on the night of the collision. The restaurant at which he stopped was located about midway between his home and Canton and it is about three and one half or four miles from Canton to the restaurant. The headlights which he saw were east of the truck — east of where he was ultimately involved in the collision. "On the right there on the south side of 19-23 there's a fifteen and a half feet of fairly level ground where cars and trucks pull off all the time there." There was very little slope at the time of the accident. "The place where the impact occurred on the road is straight. 19-23 is straight to the west."

The highway patrolman who investigated the accident testified that he arrived at the scene at approximately 10:15 p.m. Both vehicles were on the highway. No part of the trailer was off the lane of traffic, but the front of the tractor was partially angled toward the shoulder. The plaintiff was still in his automobile and was semiconscious. Defendant Moye told him the brakes on his rig had frozen and he had just gotten out of his tractor to set up flares when the plaintiff's car hit the rear of the trailer. He observed no flares or reflectors on the highway at the time. He did observe lights on the rear of the trailer. He was in close proximity to plaintiff and did not observe any odor whatever of an alcoholic nature on his person but did observe the odor in the car. There was a portion of a pint bottle of whiskey under the seat of the car in the floorboard. The seal was broken but there was a cap on it. At the time of the accident, it was raining and there was a light fog. He asked defendant Moye to move his unit to Luther Road. "I don't recall any difficulty that he had in moving his unit. I saw him drive his '57 tractor to the intersection of Luther Road and U.S. 19-23. It is three-quarters to a mile from the scene of the collision. The tractor trailer proceeded east behind my patrol car." When the officer pulled in the service station drive and stopped, the tractor-trailer unit behind him pulled in and stopped. Defendant Moye accompanied the officer to the hospital and slept all the way there. The shoulder to the south

of the highway was approximately 6 to 8 feet. On cross-examination "I observed lights on the rear of the tractor trailer. They were burning when I arrived there. I saw seven lights burning. Those lights that I have referred to, they would emit a light toward the back of the trailer. The seven lights were spread over the rear of the trailer." The accident report prepared by the officer shows that plaintiff had been drinking.

The ambulance attendant testified that he did not observe any odor of alcohol upon or about plaintiff's person.

The owner of the restaurant testified that he had known plaintiff between 15 and 20 years, that he saw him somewhere between 9:15 and 9:30 on the night of the accident, that plaintiff ordered a cup of coffee and they had a conversation. Plaintiff appeared to him to be perfectly normal and he did not detect any odor of alcohol about him. They had a conversation of at least 15 minutes duration and he was four feet from plaintiff during that time.

Plaintiff's wife testified that he had nothing to drink in her presence before he left home and she did not smell any odor of alcohol on him at the hospital when she leaned over and kissed him.

Defendant Moye testified that on the day of the accident he had left Atlanta about 3:00 p.m. headed to Hickory, North Carolina. Around 10:00 p.m. he was traveling east on U.S. Highway 19-23. He did not intend to get to Hickory that night. All the lights were burning on his truck. Six lights were burning on the back of the trailer. Just beyond Canton, he had stopped to get a Coca-Cola. While there he took his hammer and beat his tires to make sure they were all up and took a shop towel and cleaned off his headlights and taillights. As he headed east on Highway 19-23, traveling upgrade, he noticed that something "kept pulling" his truck and the wheels were smoking. He pulled over to the right until he felt the front end of the tractor begin to lean so he stopped. He put his "trouble lights" on and the two were blinking at the same time behind the trailer. He got out of the truck with his adjustable wrench, flashlight and five reflectors. He put one reflector at the front of the truck, one at the middle, one at the back, "and another about twenty-five or thirty foot, but another one angled in behind the truck." All the lights were working. He had not gotten down under the trailer to loosen the brake when he saw a car headed east about 400 feet or further back. He could not judge the speed. He "dialed" with his flashlight. The car continued without bearing to the left and without reducing speed. When the car got within 150 or 200 feet, he stepped from behind the trailer and ran across the road. He had seen

no other cars headed west at that time. When he turned around the car hit the truck. He saw a whiskey bottle in the car. "By me getting up to him, I could easily smell the odor on his breath, the odor of whiskey." After the car was moved he loosened his brake down, picked up his reflectors and put them in the truck and followed the patrolman to park his unit. He had gotten cold, it was warm in the officer's car, and he went to sleep on the way to the hospital. He did not carry in his truck any fusees, or lanterns, or any type flare. Nothing that he set out was set out a distance of 200 feet to the front or rear of his vehicle.

[2] The burden of proof on the issue of plaintiff's contributory negligence was, of course, on defendant. Viewing the evidence on the question of whether plaintiff was under the influence in the light most favorable to defendant, the evidence tends to show that there was an odor of alcohol in plaintiff's car; there was a pint whiskey bottle, partially empty, with the cap on it found in the floorboard of the car under the seat; there was an odor of alcohol on plaintiff, and the patrolman noted on his report that plaintiff had been drinking.

We are of the opinion that these are circumstances which raise merely a conjecture. "Circumstances which raise merely a possibility or conjecture should not be left to the jury as evidence of a fact which a party is required to prove." *Lunsford v. Marshall,* 230 N.C. 610, 55 S.E. 2d 194 (1949), and cases there cited.

We find no case in this jurisdiction in which this precise question has been raised on appeal. In *Brewer v. Garner,* 264 N.C. 384, 141 S.E. 2d 806 (1965), plaintiff sought to recover for personal injuries allegedly resulting from defendant's negligent operation of an automobile. Among the acts of negligence of which defendant alleged plaintiff was guilty was the operation of his automobile while under the influence of intoxicating liquor. The only evidence as to intoxication was that of the patrolman who testified that he detected the odor of some type of whiskey in plaintiff's automobile. The Court excluded evidence on cross-examination that the patrolman had signed a statement to the effect that he could not say whether any of the parties had been drinking. The Court, on appeal, held the exclusion of the evidence to be error. Higgins, J., speaking for the Court said:

> "Assuming, without deciding, the odor of some type of whisky in plaintiff's vehicle some thirty minutes after the wreck would be sufficient to permit an inference the plaintiff was driving under the influence, then certainly it would be proper by way of impeachment for the plaintiff's counsel on cross-examination to

show that on January 14, 1963, twenty-eight days after the accident, the witness had signed a statement saying, 'I could not say whether any of the parties had been drinking.' "

The Court held that after the court had permitted the evidence on intoxication to go to the jury, it was error to exclude evidence on cross-examination which weakened its effect or destroyed it altogether. With respect to instructions on contributory negligence the Court noted that the charge underscored the importance of plaintiff's intoxication on the issue of contributory negligence. "There was no evidence of intoxication except the odor of some type of whisky in and around the plaintiff's automobile thirty minutes after the collision. That odor, Mr. Bolick alone detected. The instruction on intoxication based on such equivocal evidence magnified the effect of the court's error in excluding Mr. Bolick's signed statement, 'I could not say whether any of the parties had been drinking.' " Apparently the precise question before us was not before the Court. We do not interpret this decision as approval of an instruction on the question of intoxication where the evidence is as "equivocal" as in *Brewer* and the case now before us.

We find in other jurisdictions cases, some of which appear to us to be factually stronger than this case, where the courts have found reversible error in instructing the jury on the question of intoxication on the evidence before the jury. An example is *Madill v. Los Angeles Seattle Motor Express, Inc.,* 64 Wash. 2d 548, 392 P. 2d 821 (1964). There the evidence as to drinking was not disputed. It appeared that Mrs. Madill went to Mrs. Mueller's home about 4:00 p.m. and remained there about one hour. There was beer in the icebox. They decided to go for a ride. Mrs. Madill drove. On the way out of town Mrs. Madill realized that she had no money, so they stopped at a market to get a check cashed. As a reason for cashing a check, she bought 6 bottles of beer and put them in the back seat. Later they stopped for gas, and Mrs. Mueller bought some ice and a pail into which she put the ice and the beer. Still later they stopped for dinner but found that that restaurant was not serving food. There each of them drank a bottle or glass of beer. This was 67 miles from the scene of the accident. They continued their drive, reached another town and asked directions to a restaurant. Mrs. Madill, in attempting to follow directions, missed her turn off the bypass and had to turn around to go back. After making the right turn, she proceeded north to where the collision occurred. She testified she slowed down to make a turn into the restaurant and was struck in the rear by defendant's truck. Defendant testified that she passed him and immediately swung back in front of him and slowed

ATKINS v. MOYE

down. The patrolman testified that there were 5 unbroken bottles of beer in the car and one can of beer. A witness testified he smelled alcohol strongly on Mrs. Mueller. The doctor who rendered medical attention to Mrs. Madill testified that he did not detect the odor of alcohol on her breath. Her own physician testified that she was in the habit of drinking too much beer. The trial court instructed the jury on the question of driving under the influence on the issue of her contributory negligence. On appeal, defendant's counsel argued that it was a reasonable conclusion that Mrs. Madill was driving under the influence. However, the majority of the Supreme Court (two justices dissenting) were of the opinion that though it could conceivably be said that Mrs. Madill had more than one bottle of beer, there are no facts in evidence to support it and such a conclusion would have to be based on mere speculation and held that it was prejudicial error to instruct on this question because there was no substantial evidence concerning it.

In *White v. Peters*, 52 Wash. 2d 824, 329 P. 2d 471 (1958), the evidence was that plaintiff had had two drinks prior to the accident. There the Court said "There is no evidence in this case that plaintiff White was affected in any way by the two drinks, and no evidence of conduct or appearance, from which a fair inference could be drawn that he was under the influence of intoxicating liquor prior to or at the time of the accident."

In *Wood v. Myers*, 48 Wash. 2d 746, 296 P. 2d 525 (1956), the accident occurred about 3:00 a.m. There was evidence that plaintiff had had two beers after lunch, that after 10:30 p.m. he had a beer, and that about 12:30 a.m. he went to visit a friend, left there and went to visit another friend with whom he split a "jumbo of beer." The accident occurred about 15 minutes after he left the friend's home. The patrolman and ambulance attendant both testified they smelled liquor on his breath. The trial court refused to instruct the jury on the question of intoxication on the issue of contributory negligence. On appeal, the Supreme Court affirmed saying:

> "Although this is ordinarily a question of fact to be determined by the jury, we are of the opinion that, under the facts of this case, the trial court was correct in refusing to submit this issue. Under the evidence produced, the jury would not have been justified in concluding that, at the time of the accident, Wood was under the influence of or affected by intoxicating liquor.
>
> Substantial evidence is that which would convince an unprejudiced, thinking mind of the truth of the fact to which the evidence is directed."

The Appeals Court of Illinois reached a similar result in *Kitten v. Stodden*, 76 Ill. App. 2d 177, 221 N.E. 2d 511 (1966). The evidence there was that in a four-hour period preceding the accident, plaintiff had beer and a small bottle of champagne. He and other witnesses testified he was sober. There was no other evidence of intoxication. The court instructed the jury: "Whether or not a person involved in the occurrence was intoxicated at the time is a proper question for the jury to consider together with other facts and circumstances in evidence in determining whether or not he was contributorily negligent . . ." On appeal, the instruction was held to be prejudicial error. The Court noted that the drinking of an alcoholic beverage does not of itself raise the question of intoxication. This must be proved by the evidence and testimony of witnesses. The Court said:

> "Intoxicating beverages affect different persons in different ways and some persons would be intoxicated by the consumption of the same quantity of intoxicating beverages that the plaintiff consumed, but the consumption of a similar amount by other persons would have no effect. Thus, no court has ever turned to an arithmetic solution to this problem. Rather, the courts have uniformly required the proof of facts which would tend to show intoxication, rather than the mere consumption of alcoholic beverages."

In *McCarty v. Purser*, 373 S.W. 2d 293, (Tex. Civ. App. 1963), Rev'd on other grounds, 379 S.W. 2d 291 (Tex. Sup. Ct. 1964), both plaintiff and defendant had attended a party at the officers club from 6:00 p.m. until immediately prior to the accident. Defendant had been drinking scotch but could not say how many drinks she had had during the 9 or 10 hours she was at the party. There was no evidence that anybody was drunk or intoxicated. The Court was of the opinion that the evidence was insufficient to support a finding that she was incompetent to drive by reason of being under the influence. "To hold otherwise would be to credit surmise or conjecture drawn from premises which are uncertain. There are not sufficient facts established by direct evidence upon which any such inferences can be based." See also *Van Zandt v. Schell*, 200 S.W. 2d 725, (Tex. Civ. App. 1947).

In *Baldwin v. Schipper*, 155 Col. 197, 393 P. 2d 363 (1964), the only evidence of intoxication was the testimony of one witness who said he detected the odor of alcohol on defendant. There was insufficient evidence of irregular driving. The court granted a motion for directed verdict in favor of defendant. This was affirmed on appeal,

the Colorado Court saying the evidence of intoxication was of a highly tenuous nature.

[1]   In the case before us, the only evidence of odor of alcohol on plaintiff came from the defendant himself. The officer testified there was the odor of alcohol in the car and that he noted on his report that plaintiff had been drinking. A bottle, partially empty, was found in the floorboard under the seat with the cap on. There is no direct evidence that plaintiff had had anything to drink. There is no evidence that plaintiff was speeding or weaving on the highway. The evidence is to the contrary — that for the approximately 400 feet defendant observed him, he did not turn his car to the left or right and did not change his speed. The only evidence of irregular driving is that he hit the rear of the truck.

We are of the opinion and so hold that the evidence submitted in this case is not sufficient to warrant a finding that plaintiff was driving under the influence. To hold otherwise would allow the jury to draw an inference of fact from premises which are uncertain. "The submission of any question of fact to a jury without sufficient evidence to warrant a finding is error." *Lunsford v. Marshall, supra.* Since we cannot know whether the jury's answer to the second issue was based upon a finding, under the instructions of the court, that plaintiff was driving under the influence at the time of the accident, there must be a new trial.

New trial.

VAUGHN, J., concurs.

MALLARD, C.J., dissenting.

There is evidence that immediately after colliding with the truck the plaintiff had the odor of alcohol on his breath. It is common knowledge that alcohol consumed as a beverage affects human beings. In this case the fact that the plaintiff had the odor of alcohol on his breath is circumstantial evidence that he had consumed some kind of alcohol as a beverage. When this circumstantial evidence is considered together with defendant's evidence that the truck was well lighted while stopped on the highway at night; that the road was straight; that defendant "dialed" a lighted flashlight in the direction the plaintiff's vehicle was coming before getting out of the way; that no other vehicles were meeting the plaintiff at the time of the collision and that the plaintiff drove his vehicle into the rear of the

defendant's truck without swerving and without reducing his speed, there is sufficient circumstantial evidence in my opinion to require submission to the jury of the question as to whether any alcohol plaintiff had consumed was of sufficient quantity to cause him to lose the normal control of his bodily or mental faculties, or both, to such an extent that there was an appreciable impairment of either or both of the faculties. I think the trial judge correctly presented to the jury the question of whether the plaintiff was operating his vehicle while under the influence of intoxicating beverages.