[No. 865-1. Division One—Panel 1. December 20, 1971.]

THE STATE OF WASHINGTON, *Respondent*, v. RONEAU LEE ZAMORA, *Appellant*.

*Thomas A. Clark,* for appellant.

*Christopher T. Bayley, Prosecuting Attorney,* and *Michael DeJulio, Deputy,* for respondent.

HOROWITZ, C.J.—Defendant, after jury trial, was convicted of second-degree assault. He appeals.

In the late afternoon of July 24, 1970, Frank Riley was drinking with two friends, William Cox and Richard Kirch, in the Carvery Room at the Seattle-Tacoma International Airport. They were waiting for Riley's plane. Defendant, who was unknown to them, sat down at their table. He presently entered into conversation with Riley, apparently learned he had some money with him, and offered to give Riley heroin. A short time later, after some discussion, Riley left the terminal with defendant, entered an automobile with him to obtain a promised fix, and then after failing to obtain it left the vehicle. He then went back into the terminal with defendant following him. When they were back inside the terminal, Riley, on defendant's promise that he would give Riley a fix, went with defendant in the toilet stall of a men's restroom for that purpose. While in the stall, defendant produced no drugs. Instead he stabbed Riley four times with a hunting knife taken from a

sheath on his belt. One Habib Carouba, who was in the restroom at the time with a number of others, heard Riley's cries for help, opened the stall in time to watch the defendant withdraw a knife from the victim's stomach. Defendant walked out of the stall, told Carouba "This guy tried to rob me," and left the restroom. Carouba and some others followed defendant to the main terminal entrance, where Carouba told a security officer, Leonard Potocki, that defendant had stabbed a man. Defendant then told the officer and assembled crowd "I didn't do it; I didn't do it," and ran when a second officer, Abner Thomas, appeared. The two officers chased and apprehended defendant and held him in custody pending arrival of King County Sheriff's officers. Other facts will be stated later.

Defendant contends that the court erred in failing to give his requested instructions generally to the effect that a state of voluntary intoxication may be considered by the jury in determining whether the defendant intended to commit the second-degree assault charged. The state contends that it was not error to refuse the requested instructions because there is no substantial evidence of intoxication in the required sense. We agree with the state.

Intoxication "refers to an impaired mental and bodily condition which may be produced either by alcohol, which is a drug, or by any other drug." *State v. Dana,* 73 Wn.2d 533, 535, 439 P.2d 403 (1968). *See also Provins v. Bevis,* 70 Wn.2d 131, 422 P.2d 505 (1967); *State v. Baker,* 56 Wn.2d 846, 355 P.2d 806 (1960); 45 Am. Jur. 2d *Intoxicating Liquors* § 21 (1969). In searching the record for evidence of intoxication, we search both for evidence of consumption of alcohol or other drugs and the effect of such consumption upon the defendant's ability to form the requisite intent. *State v. Conklin,* 79 Wn.2d 805, 489 P.2d 1130 (1971); *State v. Mitchell,* 65 Wn.2d 373, 397 P.2d 417 (1964). *Cf., State v. Carter,* 5 Wn. App. 802, 490 P.2d 1346 (1971). Such evidence must be substantial in character. "Substantial evidence is that character of evidence which would convince an unprejudiced, thinking mind of the truth of the fact to which the

evidence is directed." *Arnold v. Sanstol,* 43 Wn.2d 94, 98, 260 P.2d 327 (1953). The determination of whether or not there is substantial evidence is a law question for the court. *See Wold v. Jones,* 60 Wn.2d 327, 373 P.2d 805 (1962); *Trosper v. Heffner,* 51 Wn.2d 268, 317 P.2d 530 (1957); *Wood v. Myers,* 48 Wn.2d 746, 296 P.2d 525 (1956); 53 Am. Jur. *Trial* § 171 (1945, Supp. 1971). In determining whether there is substantial evidence on the issue of criminal intent, the court should consider all the circumstances of the case in which the infliction of the wound is but one, at the time the issue must be determined. *State v. Mitchell, supra. See Cook v. Robeck,* 64 Wn.2d 890, 395 P.2d 89 (1964); *Helman v. Sacred Heart Hosp.,* 62 Wn.2d 136, 381 P.2d 605 (1963).

 Thus, it is common knowledge that one may exhibit symptoms of having consumed alcohol without necessarily losing the capacity to form an intent to do an act. Whether one's capacity to form such an intent has been destroyed depends on how much alcohol is consumed and over what period of time. If, therefore, there is both evidence of the consumption of alcohol or other drugs and opinion testimony based thereon concerning the existence of intoxication, *i.e.,* impaired mental and bodily condition as defined in *State v. Dana, supra,* the totality of such evidence is substantial evidence from which it can be found that the defendant was incapable of forming the required intent. *Provins v. Bevis,* 70 Wn.2d at 137-38; *State v. Baker, supra.* If on the other hand, evidence of intoxication is based merely on opinion evidence, unsupported by facts on which to base it, the evidence at best is merely scintilla in character. *See State v. Carter, supra; State v. Tyler,* 77 Wn.2d 726, 466 P.2d 120 (1970). Scintilla evidence is something less than substantial evidence. It is speculative and conjectural, and does not have the fitness to induce conviction. An issue supported only by scintilla evidence should be withdrawn from the case. *See Wilson v. Stone,* 71 Wn.2d 799, 802, 431 P.2d 209 (1967); *Hewitt v. Spokane, P. & S. Ry.,* 66 Wn.2d 285, 286, 402 P.2d 334 (1965); *Schmidt v. Pioneer United Dairies,* 60 Wn.2d 271, 373 P.2d 764 (1962); *Arnold*

*v. Sanstol, supra.* It is not error to refuse an instruction supported merely by scintilla evidence, as distinguished from substantial evidence. *Izett v. Walker,* 67 Wn.2d 903, 410 P.2d 802 (1966); *Adams v. State,* 71 Wn.2d 414, 429 P.2d 109 (1967); *Thompson v. Groves,* 68 Wn.2d 790, 415 P.2d 648 (1966); *Smith v. Yamashita,* 12 Wn.2d 580, 123 P.2d 340 (1942). We know of no reason why principles stated concerning the quality of evidence required should not apply to the defense of intoxication. That they should so apply is implicitly recognized in *Provins v. Bevis, supra,* and *State v. Baker, supra.*

At the end of the state's case in chief, defendant offered no further evidence. The testimony of the state's witnesses contained what at best was lay opinion testimony on intoxication, but without definition of the terms "drunk" or "intoxicated" so as to enable anyone to tell whether the terms were used in the required sense. *See* 45 Am. Jur. 2d *Intoxicating Liquors* § 21 (1969, Supp. 1971). The use of terms indicating some degree of possible intoxication was unaccompanied by adequate data by which it might be determined whether the opinions expressed the extent of impaired mental and bodily condition defined in *State v. Dana, supra,* on the issue of capacity to form an intent, although they did testify to the way in which the defendant spoke during the short time that they observed him. Thus, the state's witness Cox, who observed the defendant briefly while defendant was sitting at Cox's table in the Carvery Room at the Seattle-Tacoma International Airport, testified that the defendant "was mumbling and appeared to me to be drunk," and that the defendant "was drunk and babbling, just mumbling on and on . . ." The victim, Mr. Riley, who also sat at the table, testified that the defendant was "sort of incoherent," and that when the defendant asked the victim to go to the restroom with him the defendant "was intoxicated . . . He was stumbling. His conversation was slurred." The witness Carouba, who came to the victim's rescue in the restroom immediately after the stabbing occurred, when asked whether defendant ap-

peared to be intoxicated, testified: "I don't know what you call it, but he didn't look normal." However, missing from the evidence was any testimony that the witnesses Cox, Riley and Carouba, or any other witness, saw the defendant consume either alcohol or any other drug, or otherwise knew the nature or extent of any such consumption, or the time period involved during such consumption. Indeed, there was no evidence that any witness detected an odor or other evidence of consumption of alcohol or other drugs on the defendant. Most important, however, there was no evidence from any witness, expert or otherwise, concerning the ability of the defendant to form the requisite intent to commit the crime charged based either upon testimony of the nature or extent of alcohol or any other drug consumed, or the time span of that consumption, or otherwise.

The quality of the lay conclusionary statements as constituting anything more than scintilla evidence was not strengthened by other testimony in the state's case. Defendant's use of the stratagem of inducing his prospective victim, Riley, first to go into the automobile on the promise to give him a fix, followed immediately thereafter by inducing him to go into the toilet stall of the men's restroom, ostensibly for that purpose, where he could safely rob him by knifing him, followed immediately by the use of lies to exculpate himself when he was discovered by the witness Carouba withdrawing his knife from the victim's body, tended to show that he knew what he was doing and appreciated the risks involved notwithstanding any possible alcohol or other drugs that he may have consumed. We have already called attention to defendant's statements to Mr. Carouba when the latter went to the victim's aid; and the statement by the defendant to Officer Potocki when defendant was placed in custody, and to the fact that the defendant ran when the second officer, Abner Thomas, appeared. There is also evidence that when the defendant ran he threw away his bloody knife, indicating an awareness of its incriminating character. Mr. Cox testified that he observed nothing unusual about the way in which the defendant

walked. The arresting officer testified he "wasn't close enough to notice any normal use of intoxicants. However the defendant did run in a straight, hard, fast line . . ." The defendant successfully objected to the officer's conclusion from that fact that the defendant was not intoxicated.

At best, the evidence of intoxication in the required sense, based as it was upon certain symptoms and conclusionary statements described, was merely scintilla in quality. To have permitted the jury to determine that the defendant's ability to form an intent was prevented by the claimed intoxication would have been an invitation to speculation. Such testimony lacks the quality "to convince an unprejudiced, thinking mind of the truth of the fact to which the evidence is directed." *Arnold v. Sanstol, supra. See State v. Tyler, supra,* at 755, *et seq.* It was not error to refuse instructions not supported by substantial evidence. *Izett v. Walker, supra; Adams v. State, supra; Thompson v. Groves, supra; Smith v. Yamashita, supra.*

The judgment is affirmed.

UTTER and WILLIAMS, JJ., concur.

Petition for rehearing denied January 31, 1972.

Review denied by Supreme Court March 21, 1972.