[No. 996-41694-1.    Division One—Panel 1.    May 8, 1972.]

PEARL ELIZABETH WILSON, *Appellant,* v. THE
DEPARTMENT OF LABOR AND INDUSTRIES, *Respondent.*

*Kafer, Gissberg & Wilson, John F. Wilson,* and *Gosta E. Dagg,* for appellant.

*Slade Gorton, Attorney General,* and *William T. Scharnikow, Assistant,* for respondent.

HOROWITZ, C.J.—This appeal involves the application of the phrase "permanent total disability" defined in the Industrial Insurance Act, RCW 51.08.160. At issue is whether

there is sufficient evidence to go to the jury on whether the deceased died while suffering from "permanent total disability."

Howard J. Wilson, now deceased, while employed by Three Rivers Plywood & Timber Co., fractured his right femur in an industrial accident on June 12, 1958. He became permanently, although partially, disabled thereby. His employer was covered by the Industrial Insurance Act. Thereafter the Department of Labor & Industries approved Wilson's claim for injuries sustained and paid for his medical treatment and time loss. On August 27, 1959, Wilson's claim was closed with an award of 25 per cent of the amputation value of his right leg at or so near the hip that an artificial limb could not be worn.

Mr. Wilson returned to work for his employer in October 1959 and worked steadily until April 1960. He began suffering from contact dermatitis in his lower right leg caused by a reaction to tape used in treating his fractured femur. The dermatitis spread to his entire body. On April 20, 1960, he applied to the department to reopen his claim so that he could obtain treatment for the dermatitis condition. On June 30, 1960, the Supervisor of Industrial Insurance reopened Wilson's claim retroactive to April 20, 1960. Wilson had been treated and continued to undergo treatment for his dermatitis condition by Dr. George B. Youngstrom, a dermatitis specialist in Everett, Washington, to whom Wilson's family physician, Dr. Norwin C. Riddle, referred him. The dermatitis condition was remediable and Wilson's condition improved.

On December 12, 1960, Mr. Wilson died for reasons unconnected with the industrial injury or the dermatitis condition. Mrs. Pearl Elizabeth Wilson, widow of the deceased, then filed claim for a pension under RCW 51.32.050(6) with the Department of Labor and Industries. The Supervisor of Industrial Insurance on February 2, 1961, denied her claim. The widow then appealed to the Board of Industrial Insurance Appeals. The board sustained the supervisor's action. She then appealed from the board's decision to the court

below. The department moved to dismiss the appeal on the ground that at the time of his death, Mr. Wilson was not suffering from "permanent total disability." The trial court granted the defendant's motion and the widow seeks appellate review of the judgment of dismissal entered.

RCW 51.32.050(6) provides:

> If the injured workman dies during the period of permanent total disability, whatever the cause of death, leaving a widow, . . . the surviving widow . . . shall receive [benefits] . . .

The widow basically contends that the record contains sufficient evidence to require that the issue of Wilson's "permanent total disability" at the time of his death be submitted to a jury.

■ Chapter 51.08 of the Industrial Insurance Act defines both "permanent partial disability" and "permanent total disability." The definitions, in effect, make a distinction between temporary and permanent partial disability, and temporary and permanent total disability. The word "permanent" characterizes partial disability in one case and total disability in the other. The statutory definition of the phrase "permanent total disability" makes it plain that the condition described includes not only the specific conditions listed, but also "other condition permanently incapacitating the workman from performing any work at any gainful occupation." The thrust of the definition is the permanence of the condition of total disability. Therefore, "A person whose condition is remediable is not permanently disabled." *Hiatt v. Department of Labor & Indus.*, 48 Wn.2d 843, 846, 297 P.2d 244 (1956). *See also Franks v. Department of Labor & Indus.*, 35 Wn.2d 763, 215 P.2d 416 (1950).

For total disability to be permanent, it is necessary that "the physical condition arising from the injury [be] fixed, lasting, and stable." *Hiatt v. Department of Labor & Indus., supra* at 846. The conclusion reached is similar to that reached elsewhere. Thus, as pointed out in 11 W. Schneider, Workmen's Compensation § 2307(a), at 411-12 (3d ed. 1957):

Except in cases of permanent total disability that are specially described in the statute, "a total disability should not be declared to be permanent unless it appears pretty clearly that the affliction will not yield to treatment, and that the workman will never be able to work at any gainful occupation."

This principle finds support not only in Wyoming, from which the quoted statement is taken (*Standard Oil Co. v. Sullivan,* 33 Wyo. 223, 237 P. 253, 255 (1925)), but in other cases as well. *Goebel v. Missouri Candy Co.,* 227 Mo. App. 112, 50 S.W.2d 741, 743 (1932); *Spring Canyon Coal Co. v. Industrial Comm'n,* 74 Utah 103, 277 P. 206, 212 (1929); *O. C. Whitaker, Inc. v. Dillingham,* 192 Okla. 150, 134 P.2d 588, 590 (1943).

In the instant case, the fractured femur created a permanent partial orthopedic disability. The subsequent contact dermatitis, if the dermatitis would yield to treatment, created a temporary total disability because upon removal of the dermatitis, the status of permanent partial disability would be restored. Board finding 3, which was not excepted to by the plaintiff widow, reads:

The condition of the decedent . . . was not fixed at the time of his demise . . . due to a contact dermatitis . . . treatment being afforded therefor with a reasonable medical expectation that the same would be eliminated subsequent to a short period of further treatment.

The plaintiff widow does not contend that the dermatitis condition was not remediable.

Plaintiff contends, however, that the Industrial Insurance Act, as a remedial statute, should be liberally construed. Accordingly, she contends that the word "permanent" is not an adverb modifying the word "total," but is an adjective modifying the word "disability." She then contends that if at the time of his death Mr. Wilson was suffering both from a permanent partial disability and a total disability, even though the total character of the disability is temporary, the coexistence of the two conditions constitutes

"permanent total disability." The construction contended for by plaintiff would, therefore, treat the remediable nature of contact dermatitis as a fact of no legal significance.

■■ We do not agree with the plaintiff's proposed construction of the phrase "permanent total disability." As already pointed out, the construction for which plaintiff contends does not conform to the statutory definition of the term or to the case law cited. RCW 51.08.160 should be understood in its ordinary sense. Rules of liberal construction cannot be used to change the meaning of a statute which in its ordinary sense is unambiguous. To allow such rules to be used for such a purpose would require the court to usurp the legislative function and thereby violate the constitutional doctrine of separation of powers. *See Public Hosp. Dist. 2 v. Taxpayers of Pub. Hosp. Dist. 2*, 44 Wn.2d 623, 269 P.2d 594 (1954); *United States v. Zacks*, 375 U.S. 59, 11 L. Ed. 2d 128, 84 S. Ct. 178 (1963). We cannot equate temporary total disability with permanent total disability by the use of a rule which flies in the face of the statutory definition.

Plaintiff then contends that certain testimony of Dr. Norwin C. Riddle is sufficient to make a case for the jury on the question of "permanent total disability." He testified:

Q. . . . Doctor, based on your medical training and experience and your observation of this man, by December of 1960, could you say whether or not you felt that this man's condition regarding the industrial injury was essentially fixed or would further treatment perhaps change his condition so that he could return to work?

A. I don't think that he would have been able to return to work because he went to work for a few months there and he had so much trouble he had to lay off. I don't feel that as far as I can see there, as far as treatment went and as far as the bone surgery went, I couldn't see that it would be any improvement there.

A fair reading of Dr. Riddle's entire testimony shows that he was testifying to a combination of orthopedic and contact dermatitis conditions. While the conditions coex-

isted, the workman's disability was total. If the dermatitis condition was remediable, the total disability was not permanent. Dr. Riddle did not testify, nor was he asked to testify, whether the contact dermatitis was a remediable condition; nor did he testify concerning the effect of remediable dermatitis on the existence of permanent total disability. Dr. Riddle was not a dermatitis specialist. He had, in fact, referred Mr. Wilson to Dr. Youngstrom, the dermatitis specialist. Dr. Youngstrom testified that the dermatitis condition was remediable and that Mr. Wilson's condition was improving.

The most that can be claimed for the excerpt quoted from Dr. Riddle's testimony on the issue of permanent total disability is that, standing alone, it is of no more than scintilla quality. Scintilla evidence, however, is not substantial evidence and is not enough to require the submission of such evidence to a jury. *State v. Zamora*, 6 Wn. App. 130, 491 P.2d 1342 (1971). As pointed out in *Hastings v. Department of Labor & Indus.*, 24 Wn.2d 1, 12, 163 P.2d 142 (1945), in dealing with the Washington Industrial Insurance Act, "persons who claim rights thereunder should be held to strict proof of their right to receive benefits provided by the act."

Neither the trial court nor this court can find the necessary proof here.

The judgment is affirmed.

WILLIAMS and CALLOW, JJ., concur.

Petition for rehearing denied June 8, 1972.