[Nos. 1970-2; 1971-2.   Division Two.   September 8, 1976.]

THE STATE OF WASHINGTON, *Respondent*, v. DAVID A. WARWICK, *Appellant*.

*Paul L. Stritmatter*, for appellant (appointed counsel for appeal).

*Curtis M. Janhunen, Prosecuting Attorney*, for respondent.

PEARSON, J.—The defendant David A. Warwick was charged and found guilty of one count of delivery of methylenedioxy amphetamine (MDA) and one count of manslaughter by having caused Forrest Bennett to consume a lethal quantity of MDA. The trial court entered judgment and sentence on the manslaughter verdict, but granted defendant's motion for arrest of judgment and dismissed the verdict on the delivery count. Defendant appeals from the manslaughter conviction and the State cross-appeals from the dismissal of the delivery charge. Defendant raises four

questions on appeal: (1) Should a change of venue have been granted because of pretrial publicity? (2) Was there insufficient evidence to present to the jury the question of whether the MDA supplied by defendant caused Bennett's death? (3) Was the court's proximate cause instruction erroneous? (4) Was the defense improperly precluded from impeaching its own witness on the basis of surprise? For the reasons stated below we answer each question in the negative.

On April 4, 1975, 18-year-old Forrest Bennett died. Testimony disclosed that at approximately 8 p.m., April 3, 1975, Bennett consumed some MDA. A couple of hours later, he and two friends went to a party at the Aberdeen abode of two other friends. Bennett arrived "normal" and not "high." By midnight Bennett and his friend, Madison, apprised defendant, who was also at the party, that they would like to get "stoned." Defendant accommodated them by putting some MDA powder into two paper cups of water. Bennett and Madison each drank a cup. About 20 minutes later Madison became ill. Bennett shortly followed suit.

Bennett was placed on a bed, where he "shook" for a few hours. Meanwhile, the others discussed and rejected proposed hospitalization. At approximately 6:50 a.m. an ambulance was called. Shortly thereafter Bennett was pronounced dead on arrival at the hospital. Autopsy disclosed he had died of MDA intoxication.

Defendant contends he was so unduly prejudiced by pretrial publicity that he could not receive a fair and impartial trial in Grays Harbor County, and therefore his motion for a change of venue should have been granted. A defendant is entitled to a change in venue when pretrial publicity results in actual prejudice or where he demonstrates a reasonable probability of prejudice. *Sheppard v. Maxwell*, 384 U.S. 333, 16 L. Ed. 2d 600, 86 S. Ct. 1507 (1966); *State v. Knapp*, 14 Wn. App. 101, 540 P.2d 898 (1975); *State v. Stiltner*, 80 Wn.2d 47, 491 P.2d 1043 (1971). Defendant urges that we reject the traditional stan-

dard of review that denial of a change in venue will be overturned only if the trial court has abused its discretion. *See State v. Malone*, 75 Wn.2d 612, 452 P.2d 963 (1969). Instead, he asks us to substitute our independent evaluation of the record in determining whether the court's refusal denied him a fair and impartial trial. He cites *Sheppard v. Maxwell, supra,* and *Maine v. Superior Court,* 68 Cal. 2d 375, 438 P.2d 372, 66 Cal. Rptr. 724 (1968), in support of his position.

While the Washington Supreme Court has adhered to the traditional "abuse of discretion" rubric, *see State v. Stiltner, supra* at 53, *State v. Braun,* 82 Wn.2d 157, 166, 509 P.2d 742 (1973), it has given the rule suggested by defendant its tacit approval, *see State v. Stiltner, supra* at 55, and has independently reviewed evidence presented in favor of a change in venue. *See State v. Stiltner, supra; State v. Braun, supra. See also State v. Haugland,* 14 Wn. App. 853, 545 P.2d 1237 (1976).

In the present case, our own independent review shows that on April 5, 6, and 7, 1975, three local radio stations received and periodically broadcast an Aberdeen Police Department news release stating the police were investigating five *apparently* related drug overdose cases involving teenagers, one of whom had died (Bennett), and asking that relevant information be directed to the department. Although it was not known at the time, there was no relation between Bennett's death and the other drug overdose cases which were not caused by MDA.

In addition to the radio broadcasts, five articles appeared in an Aberdeen newspaper. The first article, on April 5, 1975, contained the same information as the radio broadcasts and also identified Bennett and stated two persons had been arrested in connection with his death. The second article on April 6, 1975, identified MDA as being the cause of Bennett's death and the other drug overdoses. Defendant's name was not mentioned. The other articles, published April 8 and 11 and May 16, 1975, identified defendant as having been charged with manslaughter and delivery in

connection with Bennett's death, but did not unduly concentrate on the defendant nor refer to the other overdose cases.

Defendant's contention that the publicity violated the *Statement of Principles of the Bench-Bar-Press of the State of Washington and Guidelines for the Reporting of Criminal Proceedings, Juvenile Court Proceedings, Civil Proceedings, Public Records* (1966) is unfounded.

Neither the radio broadcasts nor the newspaper articles were sensational or inflammatory. The broadcasts, based on the news release, resulted from what the police reasonably believed was an immediate threat to public health and safety. The newspaper articles, which were factual and not accusatory, were nothing more than the conventional type of news coverage given by the media.

Defendant's greatest concern is that defendant was unjustly associated with and held responsible in the public mind for the other overdose cases because of police dissemination of the erroneous impression that the cases were related. Official participation in news dissemination is a factor to consider in determining whether the publicity is such as to warrant a change in venue. *State v. Stiltner, supra*; *State v. Butler*, 11 Wn. App. 605, 524 P.2d 488 (1974). However, official involvement with the publicity by itself, will not justify a change in venue. *See State v. Butler, supra*. The publicity must also engender actual prejudice or give rise to the likelihood that community prejudice was aroused against the defendant. *State v. Stiltner, supra*; *State v. Butler, supra*. The error in connecting all the overdose cases was, at most, only tenuously related to defendant's arrest and trial. Defendant's name and the unrelated drug incidents were never mentioned together. There was, in short, not the sort of inflammatory or prejudicial news coverage as would warrant a change of venue. *See State v. Evans*, 85 N.M. 47, 508 P.2d 1344 (1973).

The short time between the publicity and the date of trial, June 2, 1975, does not change this result. Several of the jury panel members did have vague recollections of

having read or heard over the radio something about the case. Most had either forgotten the news items until reminded in court, or could not remember what they had read or heard. Their responses suggested nothing to indicate the possibility that defendant could not receive a fair trial. The publicity and record of the jury voir dire do not support either a presumption or probability of prejudice. It was not error to refuse a change in venue.

Defendant next contends there was insufficient evidence of a causal connection between the MDA supplied by defendant and the MDA intoxication which caused Bennett's death to support the manslaughter conviction. He places primary reliance on expert testimony that the human stomach involuntarily empties every three to four hours, and, since Bennett's stomach contained undigested paper[1] and MDA powder at the time of his death, he "obviously" had consumed MDA after drinking the midnight concoction supplied by the defendant.

Our inquiry on appeal is limited to whether there was substantial evidence, viewed most favorably to the State, tending to establish circumstances from which the jury could have reasonably inferred Bennett's death was caused by the MDA supplied by defendant. *State v. Smith*, 15 Wn. App. 716, 552 P.2d 1059 (1976); *State v. Luoma*, 14 Wn. App. 705, 544 P.2d 770 (1976). Viewed in this light, the jury could have found that defendant's reliance on testimony regarding the involuntary emptying of the stomach was unwarranted since other expert testimony established such emptying, for various reasons, may or may not occur. Other evidence reasonably supported findings that the MDA consumed by Bennett at 8 p.m. on April 3, 1975, could not have caused his death; that the next and last time he ingested MDA was when he drank the mixture supplied by the defendant; that he immediately became ill, as did Madison, and remained ill and incapacitated until his death sev-

---

[1] MDA is sometimes consumed with paper to disguise its taste. There was no testimony explaining the presence of the paper in defendant's stomach.

eral hours later; and finally, that his death was caused by the ingestion of MDA supplied by the defendant.

Defendant's next assignment of error relates to the trial court's refusal to allow the defense to impeach its own witness on the basis of surprise.

Prior to trial, defense counsel obtained an oral statement from Gene Swor that he and Forrest Bennett had consumed morphine on April 3, which resulted in Swor's hospitalization for morphine intoxication. On the day he was called to testify, Swor informed the defense that he had been mistaken as to the drug involved, that it had been sporine rather than morphine. On the stand, Swor testified that he and Bennett were not together April 3, that Swor had not taken morphine on that date, nor had he seen Bennett do so. At this point counsel, claiming surprise, moved to cross-examine Swor as to the prior inconsistent statement he had made to counsel and statements to third parties regarding his and Bennett's activities on April 3. The trial judge, being of the opinion that there was no real surprise, denied the motion. We think his decision was correct.

█ It is well settled that a party may not impeach his own witness unless he is both genuinely surprised and has been affirmatively prejudiced by the witness' testimony. *State v. Matlock*, 65 Wn.2d 107, 396 P.2d 164 (1964); *State v. Thorne*, 43 Wn.2d 47, 260 P.2d 331 (1953). Defendant has satisfied neither of these requisites. First, counsel's understanding that Swor and Bennett had consumed morphine together on April 3 was based mainly on hearsay statements by third parties of what Swor had stated to them. Further, counsel were unsure that Swor, in his original statement to them, had stated he actually saw Bennett consume morphine. On the basis of these facts, plus Swor's statement that he had been mistaken as to the drug involved, we cannot agree counsel were surprised by Swor's testimony.

█ Moreover, Swor's testimony was not affirmatively prejudicial. The defense was trying to prove, through Swor,

that Bennett had taken morphine on April 3, for the purpose of introducing an alternative to the State's theory that Bennett's death was caused by MDA intoxication. Swor did not testify that Bennett had not taken morphine on April 3, only that he had not seen him consume morphine on that date. Swor's testimony, therefore, was merely a disclaimer of knowledge which was insufficient to permit impeachment by the defense. *State v. Matlock, supra.*

■ Finally, defendant assigns error to the court's instruction No. 10, which told the jury it could find defendant guilty of manslaughter if his conduct was a proximate cause of Bennett's death. Defendant argues the instruction, which is proper in civil causes, is inappropriate when applied to criminal matters. He urges that we adopt the rule that "proximate cause" in criminal cases be "direct, actual, continuous and unbroken and that there cannot be, so far as criminal matters are concerned, more than one proximate cause of death." This argument was not presented to the trial court either by way of defendant's exception, which was too general to apprise the court of the grounds for his objection, *State v. Chambers,* 81 Wn.2d 929, 506 P.2d 311 (1973), or by inclusion in his proposed instructions. We therefore will not consider it on appeal. *Haslund v. Seattle,* 86 Wn.2d 607, 547 P.2d 1221 (1976); *State v. McDonald,* 74 Wn.2d 141, 443 P.2d 651 (1968).

Disposition of the issues raised by the defendant require affirmance of his conviction and have made moot the question presented in the State's cross-appeal.

The State concedes that since the evidence was the same for the two charges, defendant could not have been sentenced under both. We need not consider whether sentences should have been imposed in the alternative in the event of reversal.

Affirmed.

PETRIE, C.J., and REED, J., concur.

Petition for rehearing denied October 18, 1976.

Review denied by Supreme Court March 21, 1977.