[No. 3351–2. Division Two. June 4, 1979.]

THE STATE OF WASHINGTON, *Respondent*, v. CLEVELAND
A. JAMISON, *Appellant*.

*William N. Goodwin,* for appellant (appointed counsel
for appeal).

*Don Herron, Prosecuting Attorney,* and *Joseph D.
Mladinov, Senior Deputy,* for respondent.

PETRIE, J.—Cleveland Alton Jamison was convicted of second–degree robbery and, pursuant to RCW 9A.56.210, was sentenced to confinement in a state correctional institution for not more than 10 years. On appeal he contends (1) the juvenile court erroneously declined jurisdiction and should have processed him as a psychopathic delinquent; (2) the suppression hearing court erroneously found that he knowingly and intelligently waived his constitutional rights prior to his confession to participation in the robbery; and (3) the trial court (a) erroneously permitted his supervisors at Green Hill School, who knew him only in that "criminal" setting, to identify him as the person in a photograph taken during the commission of the robbery, (b) improperly instructed the jury as to the age at which persons have the capacity to commit crimes, and (c) unconstitutionally sentenced him to "cruel and unusual" confinement in a penal institution instead of in an institution for treatment of his mental disabilities. We affirm.

In the early morning hours of August 9, 1977, two men entered an all–night grocery store in Tacoma, accosted the store attendant, knocked him down behind the counter, and removed an unspecified sum of money from the cash register. Photographs taken by a surveillance camera during the course of the robbery were shown to unnamed persons and, eventually, the investigation focused on Mr. Jamison. On September 6, two Tacoma police officers went to Green Hill School, a detention facility for juvenile males at Chehalis, and presented two counselors with one of the photographs. One counselor testified at trial that he related to the officers that he "believed the picture was Alton Jamison," who was then, and for a 6–month period had been, a resident at Green Hill School.[1] The other counselor responded similarly. The police arrested Jamison and administered the "*Miranda*" rights verbally and in writing. Jamison acknowledged that he was the person shown in the

---

[1]The jury was not told, but the record reflects, Jamison was an escapee from Green Hill School on the date the robbery occurred.

photograph and admitted that he and a person named "Moose" had robbed the attendant at the grocery store on August 9.

On September 14, 1977, at the age of almost 17 years and 11 months, Jamison was regularly presented to the Juvenile Court for Pierce County for a "declination hearing." He was transferred to adult status for prosecution under the criminal code. On motion for reconsideration, the juvenile court considered the reports of two teams of experts who had examined and evaluated Mr. Jamison for mental competency. Again, the court declined jurisdiction and transferred him for prosecution as an adult.

Mr. Jamison's challenge to the juvenile court's declination order focuses on that court's finding No. 3:

The court finds that though Jamison is emotionally immature *there are no other resources available to the court to keep him beyond his eighteenth birthday* since it is conceded that he would be a danger to society and would require long term treatment.

(Italics ours.)

In particular, Mr. Jamison contends that the record before the juvenile court establishes that he was a psychopathic delinquent. Accordingly, he contends the court should have, sua sponte, proceeded in accordance with provisions of RCW 71.06 which govern the commitment and treatment of psychopathic delinquents. For purposes of this opinion, we shall assume that the medical reports before the juvenile court impliedly, if not expressly, suggest that Mr. Jamison was a psychopathic delinquent. Despite this suggestion, neither his counsel nor the deputy prosecuting attorney, both of whom were present at the juvenile hearing, indicated to the court the potential remedies available through RCW 71.06.

■ RCW 71.06.160 provides:

If a minor is brought before the juvenile court or is charged with a crime in a superior court and it appears to such court at any time prior to the execution of sentence

that such minor is a psychopathic delinquent, the superior court or juvenile court may suspend proceedings, and, if a superior court, may direct the prosecuting attorney to file a petition under the provisions of this chapter, or if a juvenile court, *may direct the juvenile court probation officer to file a petition* under the provisions of this chapter. If the minor is found to be a psychopathic delinquent under this chapter, the court ordering such petition to be filed shall dismiss other pending proceedings. If the minor is found not to be a psychopathic delinquent, he shall be returned to the superior court or juvenile court ordering filing of such petition for further proceedings.

(Italics ours.) The defendant would translate this discretionary statutory direction into an exclusive mandate to proceed *only* with psychopathic delinquency remedies whenever the record before a juvenile court suggests a finding of psychopathic delinquency. The legislature has not attempted to so circumscribe the role of the juvenile court; nor shall we.

Pursuant to the mandate of *Kent v. United States,* 383 U.S. 541, 16 L. Ed. 2d 84, 86 S. Ct. 1045 (1966), the juvenile court did specify reasons for declining jurisdiction, all of which follow the criteria set forth in the appendix to *Kent.* We find those unchallenged findings of the juvenile court amply support the court's conclusion that Mr. Jamison should be transferred for prosecution as an adult for the crime of robbery.

We turn then to the suppression hearing. The defendant contends that the court should have suppressed his confession "because of [his] lack of capacity to waive his rights in the manner they were presented to him." The court disagreed and determined that Mr. Jamison had intelligently waived his right to remain silent.

We note preliminarily that on September 6, 1977, at Green Hill School, Mr. Jamison signed a statement which recited the rights set forth in *Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966). The form concludes with the expression: "I have

read the explanation of my rights hereinabove set forth and understand what my rights are." At the request of one of the witnessing officers, Jamison read a portion of the rights aloud. Then he was asked whether "he understood what he was reading." After he replied that he did understand those rights, he signed the form.

After the prosecution rested, the court proceeded to inform Mr. Jamison as required by CrR 3.5(b). Despite defense counsel's objections, the court discussed with Mr. Jamison his right to testify or not to testify at the suppression hearing, and the consequences which flow from either choice. He chose not to testify.

Dr. Raymond A. Parker, a clinical psychologist specializing in clinical neuropsychology, interpreted a battery of tests administered to Mr. Jamison by another clinical psychologist. Dr. Parker testified that there was a "significant probability" that the defendant did not "adequately understand what was read to him" from the advisement of rights form. Dr. Parker explained that Mr. Jamison had "about a high third–grade reading level," that he "has significant impairment in brain functioning," and that his speech, language, and reasoning capabilities were adversely affected by that impairment.

Following this hearing, the court, nonetheless, found that the defendant did understand his rights on September 6 when he told the police that he was the person in the surveillance photograph. The court then concluded that Mr. Jamison intelligently waived those rights at the time he admitted his participation in the robbery.

In the face of conflicting testimony, the court resolved the factual dispute in favor of an intelligent waiver after a knowledgeable understanding of those rights. We find no reason to hold contrary to the position of the judge who heard the testimony and who conducted a brief conversation with the defendant. *State v. Lewis,* 19 Wn. App. 35, 573 P.2d 1347 (1978). *See also State v. Ashley,* 16 Wn. App. 413, 558 P.2d 302 (1976).

Finally, we reach the defendant's trial. Jamison contends the trial court erred by permitting a Green Hill School counselor to express the opinion that he, Jamison, is the person in the photograph. This, he asserts, was the ultimate fact to be resolved by the jury. Additionally, he contends the trial court erred by denying his motion for mistrial when that same counselor testified that the identification was based on a 6–month period of daily observation of Mr. Jamison when "[h]e was a resident student at Spruce Cottage at Green Hill School." In other words, he contends the counselor's testimony revealed the defendant's "prior criminal involvement" when "his credibility was never put in issue before the jury."

■ The identification testimony was an expression of an opinion by a witness who was called upon to express that opinion based upon his special knowledge of Mr. Jamison's appearance at or about the time the photograph was taken. We find no error. The purpose of the evidence was to assist the trier of the facts to clarify a matter not entirely within the common knowledge of the jurors. *Accord, People v. Perry,* 60 Cal. App. 3d 608, 131 Cal. Rptr. 629 (1976).

For purposes of this opinion, we will assume that the jury could translate "resident student" at Green Hill School into an understanding that Mr. Jamison had some prior involvement with the law as a juvenile offender. We note that the offending evidence occurred when the witness was responding to a question concerning the length of time the witness knew Mr. Jamison. The polluting effect of the response, if there was any, could easily have been mitigated by a request for a cautionary instruction. We find no prejudicial error. *State v. Thrift,* 4 Wn. App. 192, 480 P.2d 222 (1971).

Concerning the asserted instructional error, we note that Dr. Parker testified at trial that Mr. Jamison had a mental age of 11.7 years. The defendant contends the trial court erroneously failed to advise the jury that the accused's

"mental" age, rather than his "chronological" age, determines the appropriate presumption as to capacity to commit a crime. The trial court told the jury that a person under 12 is presumed incapable of committing a crime, and that a person over 12 is presumed capable, but that

> Either presumption may be overcome by proof that he had or lacked sufficient capacity to understand the acts constituting the offense with which he is charged or to know that they were wrong.

 With some slight embellishments, the trial court was following the statutory declarations as to the effect of age on the question of capacity to commit crime. RCW 9A.04-.050. Without question, the legislature addressed itself to the chronological age of persons accused of crimes. We find no error.

Finally, we do not find that Mr. Jamison's sentence violates the eighth amendment to the United States Constitution. Under proper safeguards, the Department of Social and Health Services has statutory authority to transfer felons from a correctional institution to an appropriate mental hospital if conditions warrant such a transfer. RCW 72.68-.031 *et seq. See Harmon v. McNutt*, 91 Wn.2d 126, 587 P.2d 537 (1978) for the necessity to conduct a judicial hearing before transferring an objecting transferee.

Judgment affirmed.

PEARSON, C.J., and REED, J., concur.

Reconsideration denied July 2, 1979.

Review granted by Supreme Court December 10, 1979.