[Nos. 3366–II; 3391–II. Division Two. December 31, 1979.]

THE STATE OF WASHINGTON, *Respondent,* v. CLEVELAND ALTON JAMISON, *Appellant.*

THE STATE OF WASHINGTON, *Respondent,* v. GLENN DOUGLAS HESCOCK, ET AL, *Appellants.*

*William N. Goodwin* and *John Miller,* for appellants (appointed counsel for appeal).

*Don Herron, Prosecuting Attorney,* and *Joseph D. Mladinov, Senior Deputy,* for respondent.

PEARSON, C.J.—Defendants Cleveland Jamison, Glenn Hescock, and Raymond Iverson, were each found guilty by a jury of four counts of first–degree rape, one count of second–degree assault, and one count of promoting a suicide. All defendants contend on appeal that the trial court abused its discretion in denying their motion for a change of venue on the basis of unfavorable pretrial publicity. In addition, defendants Hescock and Iverson assign a separate error to the trial court's exercise of discretion in limiting their surrebuttal of a State's rebuttal witness. Defendant Jamison also makes separate assignments of error: first, to the trial court's exercise of discretion in admitting into evidence a full–length photograph of the nude victim, John Fuller; second, to the trial court's failure to hold a sua sponte hearing to determine whether Jamison is a psychopathic delinquent under RCW 71.06.160; and third, to the trial court's failure to give the jury an insanity instruction as to Jamison. After a careful review of the lengthy record in this case, we affirm the trial court in all respects.

On September 23, 1977, John Fuller, 17, was placed in a Pierce County jail cell containing five other juvenile inmates. He was labeled a "snitch" and beaten and sexually abused for 5 days before jailers transported him to a hospital. The Tacoma News Tribune reported on the "jail scandal" for several weeks, and there was some radio and television coverage. Defendants moved for a change of venue primarily on the basis of the Tacoma News Tribune articles, which contained phrases such as "prisoners can terrorize other prisoners without discovery," "five–day ordeal of beatings," and "sexual abuse." According to one article, "Janovich [the sheriff] said yesterday I am very stunned and shocked this took place within the Pierce County Jail." Defendants contend that these articles assumed their guilt, thereby violating Bench–Bar–Press Principles and Guidelines (Washington Court Rules 843 (1979)) and denying defendants a fair trial. We disagree. The media–press coverage fully comports with the Bench–Bar–Press guidelines and did not assume defendants' guilt.

 The factors generally considered by courts in determining the propriety of an order granting or denying a motion for change of venue based on alleged prejudicial pretrial publicity are: (1) the inflammatory or noninflammatory nature of the publicity; (2) the degree to which the publicity was circulated throughout the community; (3) the length of time elapsed from the dissemination of the publicity to the date of trial; (4) the care exercised and the difficulty encountered in the selection of the jury; (5) the familiarity of prospective or trial jurors with the publicity and the resultant effect upon them; (6) the challenges exercised by the defendant in selecting the jury, both peremptory and for cause; (7) the connection of government officials with the release of publicity; (8) the severity of the charge; and (9) the size of the area from which the venire is drawn. *State v. Brooks,* 20 Wn. App. 52, 579 P.2d 961 (1978); *State v. Haynes,* 16 Wn. App. 778, 559 P.2d 583 (1977); *State v. Wilson,* 16 Wn. App. 348, 555 P.2d 1375

(1976); *State v. Warwick,* 16 Wn. App. 205, 555 P.2d 1386 (1976).

We will apply each of these considerations to the present case. (1) Because of the shocking nature of the acts committed upon John Fuller, the newspaper accounts of those acts could not be other than inflammatory. While the articles do presume that Fuller was sadistically abused by "other prisoners," such prisoners are either left unidentified or named with qualification such as "who allegedly." We consider this type of news coverage factual rather than accusatory. It is no more than the conventional type of coverage given by the media. *See State v. Warwick, supra.* (2) There were apparently 4 pretrial articles concerning the jail scandal on the front page of the Tacoma News Tribune, and approximately 7 articles on inside pages. (3) The last front page article appeared on November 5, 1977, 2 1/2 months before the trial on January 16, 1978. (4) The record indicates that great care was exercised in selecting the jurors. They were chosen after extensive questioning of 43 veniremen. (5) The familiarity of jurors with the publicity and the resultant effect on them was not significant. Some jurors had no familiarity with the publicity, and others had some memory of the publicity but had formed no conclusions. (6) Defendants exercised all 10 of their peremptory challenges and 17 veniremen were excused for cause (but only 5 of the 17 for prejudice from pretrial publicity). (7) The only "government" connection with the release of publicity was the quoting of certain factual statements by Sheriff Janovich. (8) The charges were severe. (9) The venire was drawn from Pierce County, a sizeable area.

A criminal defendant is entitled to a change of venue on the basis of pretrial publicity only upon a demonstration that such publicity has resulted in actual prejudice or in a reasonable probability of prejudice to his right to a fair and impartial trial. Determination of the existence of such prejudice is within the trial court's discretion. *State v. Warwick, supra.* There was no actual prejudice to defendants from the pretrial publicity indicating that John Fuller

was abused by his cellmates, because none of the defendants denied his participation in abusing him. Their defense was only that each participated out of fear of the others and, in Jamison's case, fear plus insanity.

Next, defendants Hescock and Iverson contend that the trial court abused its discretion in limiting their surrebuttal of a State's rebuttal witness, Dr. Allison. All defendants sought to establish a defense of duress, and Jamison additionally sought to establish a defense of insanity. The surrebuttal problem arose because Hescock and Iverson wanted to establish that they acted under duress from Jamison, who was larger and stronger, and Jamison wanted to establish that he acted under duress from Hescock and Iverson, who he claims ordered him around because he was black.

Jamison's expert witness, Dr. Pritam Rohila, testified that Jamison is limited in his ability to appreciate the nature and quality of his acts. Counsel for the other two defendants had expected such testimony concerning Jamison's mental capacity. They did not expect, however, an additional statement made by Rohila that Jamison is not a leader.

On the State's rebuttal, Dr. Allison testified that Jamison is able to appreciate the nature and quality of his acts and to tell right from wrong. Neither the State nor Jamison's attorney, who cross-examined Dr. Allison, pursued the question of whether Jamison could be a leader. They limited their examination solely to the issue of Jamison's mental capacity. Hescock and Iverson then wanted to examine Dr. Allison in greater depth on surrebuttal, apparently for the purpose of supporting their theory that Jamison was not only sane, but capable of intimidating others. The court disallowed such questioning, saying, "You would have liked to have called Dr. Allison before but you didn't." Defense counsel for Iverson responded, "That's exactly right."

As in *Jarstad v. Tacoma Outdoor Recreation, Inc.*, 10 Wn. App. 551, 519 P.2d 278 (1974), defendants Hescock and Iverson had ample opportunity during the lengthy part

of their case to examine Dr. Allison concerning the matters included in their offer of proof. Since they chose to wait, they were subject to the rule that the scope of cross-examination is a matter within the trial court's discretion. *See, e.g., State v. Baylor,* 17 Wn. App. 616, 565 P.2d 99 (1977).

Testimony which is merely cumulative or confirmatory, or which is merely a contradiction by a party who has already so testified does not justify surrebuttal as of right. Moreover, a defendant on surrebuttal may not introduce evidence, as of right, on an essential point on which he failed to give evidence in his case in chief. *State v. DuPont,* 14 Wn. App. 22, 24, 538 P.2d 823 (1975).

We think the court in the present case properly recognized that the trial had been vigorously presented by capable counsel and at some point had to be brought to a conclusion. *See Jarstad v. Tacoma Outdoor Recreation, Inc., supra* at 562. There was no abuse of discretion.

■ Turning to the separate assignments of error by defendant Jamison, we hold that the trial court properly admitted into evidence a full-length photograph of the nude victim, along with several other photographs showing the victim's condition in the hospital after his removal from the jail. Defendant contends, without citing authority, that the full-length photograph was unnecessarily inflammatory because it shows the victim's genitals. This argument lacks merit on its face, hence we need not address it. *E.g., Arnim v. Shoreline School Dist. 412,* 23 Wn. App. 150, 594 P.2d 1380 (1979). Nevertheless, we hold that the photograph was no more inflammatory than the other photographs depicting John Fuller's extensive, severe injuries, and it had definite probative value as to those injuries.

Defendant Jamison next contends the juvenile court erroneously transferred him to superior court by a declination order on October 7, 1977. The record shows that prior to Jamison's involvement in the present case, he was convicted of second-degree robbery and sentenced as an adult, after the juvenile court declined jurisdiction and refused to

process him as a psychopathic delinquent on September 14, 1977. Defendant appealed to this court. In *State v. Jamison,* 23 Wn. App. 454, 597 P.2d 424 (1979), we affirmed the declination for reasons equally applicable here. Jamison was again transferred from juvenile court to superior court on October 7, 1977, pursuant to the charges brought against him in the present case. He then filed a motion to set aside the second declination order, and his motion was denied on April 6, 1979. The juvenile court found that although Jamison is emotionally immature,

> there are no other resources available to the court to keep him beyond his eighteenth birthday since it is conceded that he would be a danger to society and would require long term treatment.
>
> 4. The defendant meets all of the criteria of *Kent v. United States* [383 U.S. 541, 16 L. Ed. 2d 84, 86 S. Ct. 1045 (1966)] for transfer to adult status because of the following:
>
> a. He was involved with other persons in the commission of the crimes, some of whom were adults.
>
> b. Though the defendant lacks emotional maturity his sophistication in commission of the crimes is seen in his being street wise and having been a ward of the court at the time of the commission of the crimes because of previous criminal involvement and is currently a ward of the court because of previous criminal activity.
>
> c. Though he exhibits emotional immaturity he was nearly the age of eighteen at the time of commission of the crimes and at the time of the declination of hearing.
>
> d. His environmental situation is such that there appears little ability on the part of his parents, especially his mother, to control him.
>
> e. At the time the defendant had been transferred to adult status on a previous matter and was being held in Pierce County Jail. He had also been a ward of the court prior to his transfer to adult status.
>
> 5. There is sufficient evidence to support a conviction of the crime based on the statement of the victim, John Fuller, and another witness to the crime, Dennis Castro.

These unchallenged findings of the juvenile court follow the criteria set forth in *Kent v. United States,* 383 U.S. 541, 16 L. Ed. 2d 84, 86 S. Ct. 1045 (1966), and they

amply support the court's conclusion that Mr. Jamison should be tried as an adult on the charges in the present case. Defendant has not presented any reason the result in the present case should be different from that in his prior appeal, and we find none. He does assert that the Superior Court erred in failing sua sponte to hold a hearing to determine whether defendant is a psychopathic delinquent under RCW 71.06.160.[1] Defendant did not request such a hearing and we will not consider it further. An issue, theory, or argument not presented at trial will not be considered on appeal. *Herberg v. Swartz*, 89 Wn.2d 916, 578 P.2d 17 (1978).

Finally, defendant Jamison contends that the trial court erred in failing to give his proposed insanity instruction or, in the alternative, the court's insanity instruction which the court withdrew. The court explained the withdrawal as follows:

> The reasons for my ruling in that regard are simply these. That under the law of this state, which is personified in the—that's not the right word—incorporated in the instruction I had previously prepared and which Mr. Goodwin has now adopted, it is essential before such a defense can be presented to and considered by the jury that there be evidence in the record from which the jury could find that the defendant was unable to perceive the nature and quality of his acts or was unable to distinguish right from wrong.
>
> The testimony of Dr. Rohila wholly fails to meet that test.

---

[1]RCW 71.06.160 provides:

"If a minor is brought before the juvenile court or is charged with a crime in a superior court and it appears to such court at any time prior to the execution of sentence that such minor is a psychopathic delinquent, the superior court or juvenile court may suspend proceedings, and, if a superior court, may direct the prosecuting attorney to file a petition under the provisions of this chapter, or if a juvenile court, may direct the juvenile court probation officer to file a petition under the provisions of this chapter. If the minor is found to be a psychopathic delinquent under this chapter, the court ordering such petition to be filed shall dismiss other pending proceedings. If the minor is found not to be a psychopathic delinquent, he shall be returned to the superior court or juvenile court ordering filing of such petition for further proceedings."

■ Defendant Jamison asserts there was substantial evidence of insanity in Dr. Rohila's testimony that Jamison was "limited" in his ability to appreciate the nature and quality of his actions. It is not error to refuse an instruction supported merely by scintilla evidence, as distinguished from substantial evidence. *Wilson v. Department of Labor & Indus.,* 6 Wn. App. 902, 496 P.2d 551 (1972); *State v. Zamora,* 6 Wn. App. 130, 491 P.2d 1342 (1971). *See also* 73 A.L.R.3d 98 (1976). It is not disputed that Jamison knew right from wrong. He testified that he knew their treatment of Fuller was wrong. Rohila's qualified and rather speculative testimony concerning defendant's limited ability to appreciate the nature and quality of his acts (or limited ability to reason, in Rohila's words), appears to be scintilla rather than substantial evidence. We note that even if defendant's evidence of insanity were substantial, it does not logically and reasonably connect defendant's alleged mental condition with his asserted inability to form the required specific intent to commit the crime charged. *See, e.g., State v. Martin,* 14 Wn. App. 74, 538 P.2d 873 (1975).

Affirmed.

REED and SOULE, JJ., concur.

Reconsideration denied January 30, 1980.

Review granted by Supreme Court April 3, 1980.