[No. 5945–9–I. Division One. March 31, 1980.]

THE STATE OF WASHINGTON, *Respondent,* v. NANCY ANN ERMERT, *Appellant.*

*Richard W. Swanson* and *Millikan & Swanson,* for appellant (appointed counsel for appeal.)

*Norm Maleng, Prosecuting Attorney,* and *Christopher A. Washington, Deputy,* for respondent.

*Randy Beitel, Patrick H. McIntyre,* and *Gerald R. Tarutis,* amici curiae.

SWANSON, J.—Nancy Ann Ermert appeals her conviction of grand larceny. RCW 74.08.331.[1] The State's amended

---

[1]RCW 74.08.331 states in part: "Any person who by means of a wilfully false statement, or representation, or impersonation, or a wilful failure to reveal any material fact, condition or circumstance affecting eligibility of need for assistance, including medical care, surplus commodities and food stamps, as required by law, or a wilful failure to promptly notify the county office in writing as required by

information charged that Ermert, a recipient of Aid to Families with Dependent Children (AFDC), committed welfare fraud

> by means of a willful false statement or representation or willful failure to reveal any material fact, as required by law or a willful failure to promptly notify the county office in writing of any change in status or any other change in circumstances which affect[s] . . . eligibility, as required by law, . . .

The essence of the charge was that Ermert failed to disclose resources or income as required by RCW 74.04.300[2] by not revealing to the Department of Social and Health Services the existence of funds in a trust account Ermert had established in her sister's name and by not disclosing that she had unencumbered title to an automobile paid for in part with money from the trust account. The jury returned a verdict of guilty, and we affirm.

---

law *or* any change in status in respect to resources, or income, or need, or family composition, money contribution and other support, from whatever source derived, or any other change in circumstances affecting his eligibility or need for assistance, or other fraudulent device, obtains, or attempts to obtain, or aids or abets any person to obtain any public assistance to which he is not entitled or greater public assistance than that to which he is justly entitled shall be guilty of grand larceny and upon conviction thereof shall be punished by imprisonment in the state penitentiary for not more than fifteen years." (Italics ours.)

[2]RCW 74.04.300 provides in part: "If a recipient receives public assistance for which he is not eligible, or receives public assistance in an amount greater than that for which he is eligible, the portion of the payment to which he is not entitled shall be a debt due the state: *Provided,* That if any part of any assistance payment is obtained by a person as a result of a wilfully false statement, or representation, or impersonation, or other fraudulent device, or wilful failure to reveal resources or income, one hundred twenty–five percent of the amount of assistance to which he was not entitled shall be a debt due the state and shall become a lien against the real and personal property of such person from the time of filing by the department with the county auditor of the county in which the person resides or owns property, and such lien claim shall have preference to the claims of all unsecured creditors. It shall be the duty of recipients of public assistance to notify the department within twenty days of the receipt or possession of all income or resources not previously declared to the department, and any failure to so report shall be prima facie evidence of fraud:"

The facts are as follows: On October 27, 1971, Ermert applied for public assistance. The application included a rights and responsibilities form which stated in part:

You have the RESPONSIBILITY to—
Provide correct and complete information in your Public Assistance Application.

. . .
. . . Notify the Department promptly in writing of any change in your situation which occurs while you are receiving or have an application pending for Public Assistance benefit, regarding—
Any change in income or resources such as any gifts or property.
Any change of address.

. . .
When you buy or sell any property, including automobiles, homes, life insurance, bonds, etc.—
And any other change in your situation.

While receiving assistance Ermert was required periodically to complete eligibility review forms covering all eligibility factors, including income, bank accounts, and vehicles. On each of the five review forms introduced at trial, Ermert's signature appears below a statement which reads in part: "I understand that it is my duty to report immediately to the local office any changes in my income, resources, or living arrangements."

On November 7, 1973, Ermert set up the trust account in question. She named her sister, Janet Lee, as trustee so she would not have easy access to the money. Ermert's purpose for the account, however, was to save for a car or a down payment on a house. Ermert made all the deposits to the account, and between November 1973 and August 1975, saved approximately $1,400.

On August 27, 1975, Ermert closed the trust account and used $1,373 as partial payment for a new Toyota. The balance of the purchase price was paid with $1,200 Ermert borrowed from Seattle–First National Bank, trade–in on her old car, and money borrowed from friends. There is some confusion in the record, but receipts from the Toyota

dealer show that in late August or early September Ermert paid $2,300 toward the car, and that she paid the balance of $1,200 on September 17, 1975.

The existence of the trust account was never reported. On the four eligibility review forms she completed after the trust account was opened, she left blank the question regarding "money held for you by others." The record fails to disclose when she paid the Seattle–First loan, but in briefs submitted to this court, Ermert indicates she repaid the loan in March or April of 1976. However, on a review form completed July 1, 1976, Ermert stated she still owed $1,500 on the car. There was evidence that the amount of the trust account and the equity in the car put Ermert over the resource limits for a family of three receiving public assistance contained in WAC 388–28–430.[3]

Ermert's explanation at trial for the trust account was that it contained savings from her public assistance grant. She said she felt a "resource" as used in the eligibility review forms meant money earned or acquired by gift. She maintained that she never intended to defraud the State. The trial court instructed the jury on the nine elements of civil fraud as well as the elements of the crime charged.

Ermert's first claims of error do not involve any action of the trial court. Her contention is that the court erred in the "categorization of funds she was able to save as income or resources." It was a question of fact for the jury, however, whether the money in the trust account was saved by Ermert from her grant. The trial court did not in any way

---

[3]WAC 388–28–430(2) provides in part:

"(a) Ceiling values on combinations of individual items. The total value of cash, marketable securities, cash discount value of real estate or chattel mortgages and sales contracts, cash surrender value of life insurance, and equity in cars shall not exceed $750 for a single person, or $1,450 for a family of two. This maximum shall be increased by $50 for each additional member in the family.

" . . .

"(b) Cash and marketable securities—ceiling. Within the above limitation the value of cash and marketable securities shall not exceed $200 for a single person or $400 for a family of two. This maximum shall be increased by $25 for each additional member of the family over two."

categorize the money as income or resources, and there is nothing for this court to review.

██ Ermert next argues that the trial court erred in giving instruction No. 3, the "to convict" instruction.[4] She claims the instruction was erroneous because it did not allow her to argue her theory of the case, *i.e.*, that a welfare recipient has no *duty* to report savings from public assistance. This contention fails because it adopts as a major premise a fact at issue—whether the money was, indeed, saved from the grant. Ermert proposed no instruction squarely presenting this factual issue to the jury, but she was free to argue below, and did argue, that she saved the

---

[4] "To convict the defendant Nancy Ann Ermert of the crime of grand larceny as alleged in the amended information, the state must prove to you beyond a reasonable doubt:

"(1) That during a period of time intervening between the 14th day of February, 1974, through the 1st day of November, 1976, the defendant did obtain or did attempt to obtain from the Department of Social and Health Services, certain personal property, to-wit: lawful money of the United States;

"(2) That the defendant was not entitled to said property or that said property was in a greater amount than that to which she was entitled;

"(3) That said property was obtained or attempted to be obtained by means of

"*Either*:
 "(a) a willful statement or representation;
 "*Or*
 "(b) a willful failure to reveal any material fact as required by law;
 "*Or*
 "(c) a willful failure to promptly notify the county office in writing of any change in status in respect to resources, or income, or need, or family composition, money contribution and other support from whatever source derived, or any other change in circumstances affecting her eligibility or need for assistance as required by law; and

"(4) That the above acts occurred in King County, Washington.

"If you find from the evidence in this case that the state has proven beyond a reasonable doubt elements (1), (2), and (4), and either (3)(a) or (3)(b) or (3)(c), then it will be your duty to return a verdict of guilty of the crime of grand larceny. In connection therewith, you are instructed that the entire number of the jury must agree that either subelement (a) or subelement (b) or subelement (c) of element (3) has been proved.

"On the other hand, if after weighing all the evidence and lack of evidence you then entertain a reasonable doubt as to the establishment of any one of the foregoing elements, then it will be your duty to return a verdict of not guilty." Instruction No. 3.

money from her public assistance grant. On appeal she proceeds on the basis that her evidence was uncontroverted. The jury, however, was not required to accept her explanation that she saved the money. There was evidence from which the jury could have found that Ermert was not credible.[5] In addition, no error can be predicated upon the failure of the trial court to give an instruction when no request for an instruction is made. *State v. Hanson,* 20 Wn. App. 579, 581 P.2d 589 (1978). It is also the rule that an exception to an instruction must be sufficiently particular to apprise the court of the grounds of the objection. *See State v. Warwick,* 16 Wn. App. 205, 555 P.2d 1386 (1976). The record shows that counsel for Ermert excepted to instruction No. 3 because he believed there existed a lesser included offense of which Ermert might be found guilty. The record also reveals that counsel failed to offer a proposed instruction.[6] Because the contention that the instruction prevented Ermert from arguing her theory of the case was not presented to the trial court by way of exception or

---

[5]She indicated on a review form dated January 2, 1976, that she owed $2,300 to Seattle–First National Bank, even though the loan was for only $1,200; she misrepresented her ownership of the Toyota on the July 1976 eligibility review form; she demonstrated a hazy memory regarding amounts received from a work incentive program; she characterized her AFDC grants as "child support" on an application for the loan from Sea–First because she was afraid she would not get credit if she indicated she was receiving public assistance; the simple fact the trust account was put in her sister's name raises the inference that she intended deception.

[6]In excepting to the court's instructions, counsel for Ermert stated, "The to convict instruction—I'm not certain on this, but I did want to mention that there is in the statute a lesser included offense of making a false statement, . . . [I]t would appear from the way that the statute—I think it's 74.08.331—is worded that it sets forth both a felony and a misdemeanor, and it would seem that the misdemeanor would be included in the felony. The question is whether the evidence in this case is such that there is any possibility that there could be guilt of a lesser included offense. . . . I haven't proposed a specific instruction. I wasn't quite sure how to do it. It should be, if it's in here, the next to the last paragraph of the to convict instruction."

inclusion in a proposed instruction, we will not consider it on appeal. *State v. Warwick, supra.*[7]

By this discussion we do not intend to imply that had Ermert saved the money from the grant she would have had no duty to report it. That question will be decided when properly raised.

 The issue of the correctness of the "to convict" instruction is also raised by the Peoples Welfare Rights Organization as amicus curiae. The amicus contends the instruction is flawed because it did not tell the jury that to convict it must find that Ermert obtained public assistance by means of a willfully *false* statement or representation. *See State v. Walters,* 8 Wn. App. 706, 508 P.2d 1390 (1973). The test, however, is whether the instructions, taken as a whole, properly inform the jury of the law. *Sherk v. Redding,* 7 Wn. App. 867, 503 P.2d 131 (1972). Here, the defendant herself insisted that the civil fraud instruction be given.[8] Elements of civil fraud include that the representation be material and false and that the speaker have

---

[7] That portion of the verbatim report of proceedings quoted in appellate counsel's brief does not support the view that the trial court was apprised of the objection to instruction No. 3 that is now being argued on appeal. There was a lengthy colloquy among the judge, prosecutor, and defense counsel regarding the court's instructions, but the discussion centered on whether the jury should be given the defendant's requested instruction defining civil fraud. The prosecutor opposed giving the fraud instruction, arguing that it greatly increased the State's burden of proof. The trial court nonetheless gave the instruction.

[8] "Under Washington law, proof of fraud requires the proof by the party alleging fraud, of each of the following nine elements:
"1. A representation of an existing fact;
"2. Its materiality;
"3. Its falsity;
"4. The speaker's knowledge of its falsity or ignorance of its truth;
"5. The speaker's intent that it should be acted on by the person to whom it is made;
"6. Ignorance of its falsity on the part of the person to whom it is made;
"7. The latter's reliance on the truth of the representation;
"8. His right to rely on it;
"9. His detriment.
"The burden of proof of fraud as contained in subsections (a), (b) and (c) of (3) in Instruction 3 is upon the State in this case." Instruction No. 14.

knowledge of such falsity. The fraud instruction also clearly referred to instruction No. 3 by telling the jury that the State had the burden of proving fraud as used in instruction No. 3. The jury could be left with no doubt that to convict Ermert it must find that any representations or statements by which she obtained or attempted to obtain public assistance were false.

The amicus raises other issues, some of which we are tempted to address. Principally, the amicus argues that a recipient of public assistance is not "required by law," within the meaning of RCW 74.08.331 and 74.04.300 to report savings from the grant. As with Ermert's contention that the trial court erred in categorizing money saved from public assistance as income or a resource, this argument presupposes that the money in the trust account was, in fact, saved from Ermert's grant. No instruction was requested allowing the jury to pass on this factual issue, and no instruction was requested to inform the fact finder of the defense theory that money saved from the grant need not be reported. We decline the invitation to pass on questions that are not properly presented and which need not be resolved to decide the case before us.

■ Finally, Ermert makes several arguments in her pro se briefs. We have reviewed them and find them to be without merit, but we wish to address two of her contentions. First, she states that the restitution ordered exceeds the amount she actually received during the time covered by the information. We can find nothing in the record by way of testimony or exhibits to support this contention. Lastly, Ermert states emphatically that she never intended to defraud the State. We note that the jury was instructed that the making of a false representation becomes a criminal act only when accompanied by a fraudulent intent. Thus, the issue of Ermert's intent was properly presented,

and we cannot substitute our judgment for that of the jury.[9]
Affirmed.

JAMES, A.C.J., and WILLIAMS, J., concur.

Reconsideration denied May 22, 1980.

Review granted by Supreme Court August 15, 1980.

---

[9]Given our disposition of the case, we need not reach the issue raised by the amicus that RCW 74.08.331 is an unconstitutional delegation of authority to DSHS.